Hon. WILLIAM H. HUNT, ⎫
Hon. HORACE R. BUCK, ⎬ Associate Justices.

○

STATE OF MONTANA EX REL. NOLAN, ATTORNEY GENERAL, *v.* THEODORE BRANTLY, JUDGE THIRD JUDICIAL DISTRICT.

[Submitted September 20, 1897. Decided October 11, 1897.]

*Constitution— Waiver—Information, Verification of—Jurisdiction.*

1. CONSTITUTION—*Waiver.*—The protection afforded by Article 3, Section 7 of the Constitution, which provides that "no warrant * * * to seize any person * * * shall issue * * * without describing the person * * * to be seized nor without probable cause, supported by oath or affirmation, reduced to writing," is waived in a criminal case, unless the defendant objects at the trial.
2. INFORMATION, VERIFICATION OF—*Jurisdiction.*—The fact that an information is not verified, does not deprive the court of jurisdiction to try the case.

(173)

APPLICATION by the State of Montana, on the relation of C. B. Nolan, Attorney General, for a writ of *certiorari* to review the action of Theodore Brantly, Judge of the Third Judicial District, in granting a writ of *habeas corpus* on the application of William Day, who had been convicted of murder in the first degree.    Reversed, and *habeas corpus* proceedings dismissed.

*C. B. Nolan*, Attorney General for the State.

The propriety of reviewing the action of the lower court in discharging the defendant Day by this proceeding is no longer an open question in this state. (*State ex rel. Mathews* v. *Eddy*, 10 Mont. 312, 25 Pac. 1032; *State ex rel. Murphy* v. *Second Judicial District Court*, 10 Mont. 401, 25 Pac. 1053, 48 Am. St. Rep. 682; *In re MacKnight*, 11 Mont. 127, 27 Pac. 336, 28 Am. St. Rep. 451; *In re McCutcheon*, 10 Mont. 115, 25 Pac. 97; *Hayes* v. *First Judicial District Court*, 11 Mont. 225, 28 Pac. 259; *In re Finkelstein*, 13 Mont. 425, 34 Pac. 847; *State ex rel. Hendricks* v. *Seventh Judicial District Court*, 14 Mont. 452, 37 Pac. 9; *State ex rel. Nixon* v. *Second Judicial District Court*, 14 Mont. 396, 40 Pac. 66; *State ex rel. Beall* v. *Ellis*, 15 Mont. 224, 38 Pac. 1079; *Independent District Telephone Co.* v. *Second Judicial District Court*, 15 Mont. 324, 39 Pac. 316, 48 Am. St. Rep. 682; *State ex rel. Wilhelm* v. *Third Judicial District Court*, 17 Mont. 411, 46 Pac. 259; *Johnson* v. *Case*, 17 Mont. 518; *Bartlett* v. *Second Judicial District*, 18 Mont. 481; *Simpson* v. *Votaw*, 18 Mont. 279; *Vacovich* v. *Votaw*, 17 Mont. 308.) The petition presented to Judge Brantly showed that the court had jurisdiction of the offense, had jurisdiction of the person, that a judgment was in existence of a court of general jurisdiction, and that a mittimus by which the defendant Day was held in custody was regularly issued by a court of competent jurisdiction.    All of these facts appearing the court had no jurisdiction through *habeas corpus* to inquire into the irregularity of the proceeding. (*Sennotts Case*, 146 Mass. 489, 16 N. E. 448, 4 Am. St. Rep. 344 and cases collected in

note thereto at page 348; *State* v. *Neel*, 48 Ark. 283, 3 S. W. 681; *In re Watkins*, 3 Peters 201; *Ex parte Parks*, 93 U. S. 18; *In re Elred* and *In re Ford*, 46 Wis. 539, 1 N. W. 175; *Phinney Petitioner for habeas corpus*, 32 Me. 441.) "The court or judge, if the time during which such party may be legally detained in custody has not expired, must remand such party, if it appears that he is detained in custody. First: By virtue of process issued by any court or judge of the United States, in a case where such court or judge has exclusive jurisdiction, or, second: By virtue of the final judgment or decree of any competent court of criminal jurisdiction, or of any process issued upon such judgment or decree." A section practically the same as this was under consideration by this court in the case of *In re McCutcheon*, 10 Mont. 115, and it is respectfully submitted that that case is decisive of this controversy.

*M. J. Cavanaugh* and *John N. Kirk*, for Respondent.

HUNT, J.—*Certiorari.*—William Day applied to the District Court of Deer Lodge county for a writ of *habeas corpus*. The District Court granted the writ. The state asks this court to review the action of the lower court.

On September 15, 1896, an information was filed in the District Court of Silver Bow county charging William Day with the crime of murder in the first degree. When the information was filed, Day had not been examined and committed by a magistrate, or admitted to bail upon any charge, and it would appear from the record that he was at liberty when the information was filed. Leave of court was asked by the County Attorney to file the information. The application for leave was in writing, filed September 15, 1896, and subscribed by the County Attorney of Silver Bow county. This application was not sworn to or affirmed by any person. The presumption is, however, that the information was filed after leave of the court was granted. The information did not contain any oath or affirmation. It was simply subscribed by Melville L. Wines, as County Attorney of Silver Bow county, Montana.

The prisoner was arraigned on this information in due form, and entered his plea of not guilty. He was tried and convicted of murder in the second degree, and thereafter sentenced to the penitentiary for 60 years. No motion was made at the time required by law to set aside the information, nor did the prisoner interpose any demurrer within the time allowed him by statute; and it is conceded that the proceedings in the arraignment and trial of the prisoner and the judgment of the court and his commitment to the penitentiary were regular.

The specific ground upon which the prisoner claims he is illegally deprived of his liberty, is that the information charging him with murder was not verified, and that no showing upon oath or affirmation was made by the County Attorney or any other person at the time of the filing of the application for leave to file the information, and that there was no examination had upon the charge of murder or any charge by a magistrate wherein probable cause, supported by oath or affirmation, was made to appear. The Attorney General concedes these facts. The question therefore is: Have the prisoner's constitutional rights been violated by the negligence or omission of the authorities to proceed under limitations of Section 7 of Article 3 of the Constitution of the State? That section reads as follows: "The people shall be secure in their persons, papers, homes and effects, from unreasonable searches and seizures, and no warrant to search any place or seize any person or thing, shall issue without describing the place to be searched, or the person or thing to be seized, nor without probable cause, supported by oath or affirmation, reduced to writing."

The learned judge of the District Court was of the opinion that Section 7, *supra*, guarantees to the citizen rights which even he is not permitted to waive, and that a conviction had upon an information not verified, and upon one where, when leave of the court is asked to file an information, no showing has been made to the court of the probable cause in writing, signed by the party making the charge under oath, is abso-

lutely void *ab initio*, and that no valid judgment can be rendered thereon.

In our careful deliberations upon the question presented, several points have arisen involving the full meaning of the constitutional section quoted, which lead us to reserve for final decision, in the absence of brief and argument, just to what entire extent the provisions of Section 7, *supra*, may restrict procedure by·information where leave of court is asked, and.where no preliminary examination has been had.· If all kinds and methods of prosecutions are affected, yet an information is a statement of probable cause when filed by the county attorney; and if he, being a sworn officer, need attach no special verification, but his official signature is to be regarded as supporting the information by his oath, the prisoner herein cannot complain, for he has not been wronged.

It is therefore only necessary for us to consider the phase of the question presented and particularly insisted upon, namely, that based upon the argument that a verification to an information is necessary, and that because of its absence, the District Court never acquired jurisdiction to hear the case and render judgment.

It is fundamental that the trial of a case involves the exercise of judicial power. (*Ex parte Milligan*, 4 Wall. 2.) Judicial power is conferred and regulated almost exclusively by the constitution and statutes of the state. A court obtains jurisdiction of the subject-matter by the filing of such a pleading as will bring the action within the authority of the court. (Works on Jur., § 11.) But the pleading need not necessarily state a cause of action, although it must be sufficient to show that the subject-matter of the action is within the jurisdiction of the court. (*Id.*)

When the County Attorney (presumably by leave of the court) filed the information against Day, charging him with murder, the District Court, under Section 11 of Article 8 of the Constitution, had the capacity to entertain an information for that offense. Now, what is a statutory information ? "An information is an accusation in writing, in form and substance

like an indictment for the same offense, charging a person with a public offense, presented and signed by the county attorney and filed in the office of the Clerk of the District Court.'' (Penal Code, § 1372.)

Turning to the definition of an ''indictment,'' it is an accusation in writing, presented by a grand jury to a competent court, charging a person with a public offense. (*Penal Code* § 1371.)

It will not be denied that the allegations of the body of the information under which Day was tried are sufficient to charge murder. They are in substance and form such as are used in indictments, and constitute an accusation in writing for the crime of murder. Under the statutes of the state, no verification of an information or indictment is required; and, unless rendered wholly void by the constitutional provisions heretofore referred to, the information herein was valid, and a warrant could issue upon it.

Granting, however, as we do (at least until the direct point is discussed before us, and it is otherwise held), that a verification to an information is necessary, still it is not so essential to the information as that without it the court has no jurisdiction of the offense charged. It is true that, to authorize a warrant to be issued, there must be a support to the statement which contains the facts which constitute probable cause, and that such support must be by oath or affirmation, reduced to writing. It is equally true that, if there be no such support, a warrant is of no avail, and the person arrested under it may be at once discharged if he invokes his constitutional rights. But a verification to an information adds nothing to the charge itself. It goes to insuring good faith in the averments of the charge. It is a formal matter required by the constitution but, strictly speaking, it is no part of the charge itself. It supports the probable cause by fixing responsibility. No issue is tendered by a verification, nor does it add any allegation to the offense pleaded. The provision that no warrant shall issue without probable cause, supported by oath, prevents arbitrary accusations by requiring

affidavits of truthfulness to facts constituting probable cause, avoids false issues, and guarantees to the citizen that no warrant of seizure of his person can lawfully issue except upon such probable cause, supported by the oath of some one. But, being a formal matter, the support by oath or affirmation can be waived; and, if the verification can be waived, the illegality of a warrant issued upon an unverified information can also be waived. Suppose A. is charged with murder by a verified information. Can he not go into court, ask to be arraigned, and submit himself to the jurisdiction, without waiting for a warrant of arrest at all? Surely he can. And, if he does so by entering a plea of not guilty, can he afterwards raise a question of the legality of his arrest, on the ground that he was not taken under a warrant? Clearly not, for he has waived the protection against arrest except under a warrant. Prosecutions require warrants. Nevertheless, the fact that the constitution gurantees to the citizen as a protection that no warrant shall issue unless based upon probable cause, sustained by oath, does not prevent a waiver of the information upon which the warrant issues, or of the warrant itself. Bishop says: "If, except where some counter doctrine presses with a superior force forbidding, a party has requested or consented to any step taken in the proceedings, or if at the time for him to object thereto he did not, he cannot afterwards complain of it, however contrary it was to his constitutional, statutory, or common-law rights.   *   *   * Necessity is the chief foundation for this doctrine. Without it a cause could rarely be kept from miscarrying." (1 Bish. New Cr. Law, § 118.)

We do not believe the provision of the constitution is a jurisdictional limitation upon the power of the court by prohibiting the exercise of power, unless an information is verified. (*State* v. *Polson*, 29 Iowa, 133.) The constitutional section does secure a personal right to the citizen, but does not affect the jurisdiction of the court. No wrong can be done to the prisoner by permitting him to voluntarily waive the formality of a written oath in support of the charge against

him; nor is there any counter doctrine which presses with superior force. If he can waive his right to a speedy trial, or his statutory time to plead, or the fact that an indictment does not state facts sufficient to constitute an offense, or his right to object to the introduction of illegal testimony or a right to a preliminary examination altogether, or the constitutional limitation as to jeopardy by motion for a new trial or motion in arrest of judgment, or his right to object to the persons composing the grand jury, or to the manner in which it was impaneled, and other rights guaranteed him by the constitution or the laws of the state, some of which are far more important than the formality of a verification to a pleading, no matter how much the waiver may subsequently prejudice him, we can see no objection to his waiving the formality of a verification to an information filed against him. He had opportunity, under the statute, to preserve his rights, and to have his exceptions reviewed by this court on appeal; but, having made no objection to the information at the proper time, the District Court that tried him was right to proceed with the trial. The judgment of the court that sentenced him was therefore regular and valid, and the prisoner is lawfully imprisoned. (*Ex-parte McConnell*, 83 Cal. 558, 23 Pac. 1119.)

Our conclusion is that the District Court that granted the writ of *habeas corpus* had no jurisdiction to make such an order, wherefore its action in the premises is reversed, and the proceeding is dismissed.

*Reversed and Dismissed.*

Pemberton, C. J., and Buck, J., concur.