GADSDEN D. BRYAN, PLAINTIFF IN ERROR, VS. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

1. The verity of the record proper that has been made up and exists in the lower court, or a bill of exceptions that has been settled and signed by the trial judge and made a part of the record as provided by statute, can not be questioned in the Supreme Court.

2. When a bill of exceptions comes on for settlement before the trial judge, and objections are made to the insertion of matter in the bill, but it is inserted by direction of the judge and the bill is signed by him and filed in the cause, it can not be insisted in the appellate court that the matter objected to is no part of the bill. The statute provides that when a judge refuses to settle and sign a proper bill of exceptions when seasonably tendered to him, three persons may sign it in his presence.

3. An information filed in a criminal court of record had appended to it an affidavit in form prescribed by statute, and after verdict it was objected in motions in arrest of judgment and

for new trial that the prosecuting officer did not in fact swear to the information: *Held*, That such objection was waived by pleading to the merits and going to trial.

4. The grounds that disqualify judges and jurors are not co-extensive under the statutes of Florida. Under Section 967, Revised Statutes, the grounds that disqualify a judge are when he is a party to the suit or is interested therein, or when he would be excluded from being a juror by reason of interest, consanguinity or affinity to either of the parties; and under Section 1086 a juror may be examined to ascertain whether he is related to either party, or has any interest in the cause, or has expressed or formed any opinion, or is sensible of any bias or prejudice, and when it shall appear to the court that the juror does not stand indifferent in the cause, or is otherwise incompetent, another shall be called in his stead.

5. Mere bias or prejudice, however strong, is no ground of disqualification of a judge of a criminal court of record under the statutes existing in Florida.

6. Questions touching interest, motive or animus of a witness are not collateral or immaterial, and such matters may be shown as independent evidence to be considered by the jury in estimating the credibility of the witness.

Writ of error to the Circuit Court for Volusia county.

The facts in the case are stated in the opinion of the court.

*W. L. Palmer*, for Plaintiff in Error.

*The Attorney General*, for Defendant in Error.

MABRY, J.:

Plaintiff in error was convicted in the Criminal Court of Record of Volusia county of the crime of larceny, and brings writ of error to this court.

A motion has been made here by his counsel to

strike out a portion of the record, designated as a certain certificate of the presiding judge, found on stated pages, and the grounds of the motion are the following: 1st. That no such facts as are contained in said certificate were adduced in the argument on hearing of the motion for new trial, nor were they offered or used at any stage of the trial. 2nd. "That said certificate is not a part of the bill of exceptions, counsel for plaintiff in error having refused to admit such certificate in the bill of exceptions as it formed no part of the trial of the cause." 3rd. That said certificate was an *ex parte* statement of the persiding judge, never presented to counsel or known to have been in existence until thirty days after the argument and decision on the motion for new trial. The portion of the record sought to be eliminated is found in the record proper, and also in what purports to be the bill of exceptions. In the record proper it is found in connection with the order of the court overruling the motion for a new trial, to the effect that, the foregoing motion (meaning motion for new trial) came on to be heard and the court knew of his own knowledge that he was not and never had been of counsel of the alleged owners of the cow mentioned in the information, and was in no way interested in the cow alleged to have been stolen, nor attorney for any one claiming the same, was not interested in the cause, was not related to any of the parties, knew no disqualifications and had no bias or prejudice that would prevent the defendant from having a fair and impartial trial in the case. The court further knew that G. P. Fowler and Frank Clark did not take charge of and manage the case, but only assisted the County Solicitor; that at no time was the case allowed to proceed or witnesses examined in the absence of any counsel, either for the State or defendant, and the court's attention

was never called to the absence, if it occurred, of the prosecuting attorney during the progress of the trial, and not till the motion for a new trial was made.

There is a bill of exceptions in due form signed by the judge and made up under an order extending the time sixty days, and immediately following his signature is the following: "I hereby certify that it is contended by counsel for defendant that the attached order which was made on the motion for a new trial in this case—State of Florida against Gadsden D. Bryan, larceny of a domestic animal—which is in words and figures following to-wit" (giving the order as above stated) "should not be put in the bill of exceptions, but in the record, and the court consents to attach the same and make it a part of the bill of exceptions in this way. This was the order made on the motion for new trial, and this certificate is signed at the same time as the certificate in the above order." This was also signed by the judge.

The motion for a new trial made in the case and denied embodied various grounds, among them were the following: that the judge was disqualified to preside at said trial and declined to file a suggestion of his disqualification as required by Section 2821, Revised Statutes, by reason of which disqualification defendant did not have a fair and impartial trial; and that the prosecuting attorney was from time to time absent from the court room during the trial of the case, and left the management and conduct of the suit to counsel employed by private parties. With the motion to strike out affidavits were filed bearing not only upon the insertion in the bill of exceptions of the matter sought to be eliminated, but upon other grounds and matters therein contained, and in reply counter affidavits have been presented.

In the exercise of its appellate jurisdiction this court acts upon the record as made in the court below, and if that record be defective an amendment of it can not be made here. In harmony with previous decisions of this court and others we held in Glaser *et al.* v. Hackett, 38 Fla. 84, 20 South. Rep. 820, that a bill of exceptions regular in form, properly prepared and attested by the trial judge, could not be attacked in the appellate court even for fraud practiced in obtaining it, and that if improperly made up in the lower court its correction must be sought there, and the amended record brought up by *certiorari*. This ruling proceeds upon the theory that when a bill of exceptions has been settled and signed by the judge, and become a permanent record as provided by the statute, its verity can not be questioned in the appellate court, and it is upheld not only by the cases cited in its support, but by numerous other adjudications. Cluck v. State, 40 Ind. 263; Woodworth v. Bierly, 43 Iowa, 106; State v. Wroth, 15 Wash. 621, 47 Pac. Rep. 106; Eastman v. People, 93 Ill. 112; Earl of Glasgow v. Hurlet Alum Co., 3 H. L. Cases 25; 3 Ency. Pl. & Pr. 513 and note. The case of Glaser v. Hackett did not decide that evidence was inadmissible to show that a bill of exceptions apparently regular did not in fact exhibit the matters truly as contained therein when settled and signed by the judge, as that it had been unauthorizedly altered after it had become a part of the record as provided by statute. The trial court would undoubtedly have the right in such a case to eliminate such matter from the record. It was said in Louisville & Nashville Railroad Co. v. Malone, 116 Ala. 600, 22 South. Rep. 897, that the rule declaring parol evidence inadmissible to vary or contradict a record does not prohibit the introduction of such evidence when the purpose is to show that a paper writing or in-

strument which purports to be a record in fact is not a record, and that such showing could be made in the appellate court. It appears to us that the question whether this court has the authority to eliminate matter conceded or clearly shown to have been improperly added to the record after it was made up, is not involved in the grounds of the present motion.

It is entirely clear that the first and third grounds involve nothing more than the truthfulness of the record as made by the trial judge and it is settled law that this can not be questioned by affidavits in the appellate court. The second ground asserts that the matter objected to was not a part of the bill of exceptions, counsel for plaintiff in error having refused to admit it in the bill as it formed no part of the trial of the cause. This is not a statement that the bill of exceptions after it had been settled and signed by the judge and become a part of the record had been altered by having something added to it, but is rather an assertion that the matter incorporated into the bill and objected to was no part thereof, because counsel refused to admit it on the ground that it formed no part of the trial of the cause. It appears on the face of the bill certified to us that the judge made the matter objected a part of the bill at the time he signed it. The statute (Section 1268 and 2971 Revised Statutes,) provides that the judge shall sign a bill of exceptions if it fairly states the truth of the matter and exceptions designed to be taken, and when signed it shall become a part of the record in the case. In the event the judge refuses to sign such a bill when tendered to him, it is further provided that three persons may sign in his presence. The bill that an exceptant has a right to have signed and that the judge ought to sign is one that fairly states the truth of the matter and the exceptions designed to be taken. When

the judge refuses to sign such a bill, the exceptant may procure, if he can, his proposed bill to be signed, as authorized by the statute, by three persons, and thereby present to this court a true statement of what occurred in connection with the exceptions taken. Whether this is the exclusive way of getting such matters before the court when the judge refuses to sign, it is not now necessary to say. When the bill of exceptions comes on for settlement before the judge, if the exceptant objects to the insertion of matter into the bill, and the judge directs it to be inserted notwithstanding the objection, and the bill is signed and constitutes the only one filed in the cause, it can not be insisted in this court that the matter objected to is no part of the bill. What the judge settles and signs as a bill of exceptions and is accepted as such by the exceptant must go unchallenged in this court. If counsel designed to raise the question in the present case, that after the bill of exceptions was signed by the judge and became a part of the record it was altered by having matter added to it, they have not done so in the motion made. But if we go beyond the grounds of the motion a different conclusion could not be reached on the affidavits filed. No one positively asserts that the recitals in the order overruling the motion for new trial were not made a part of the record proper during the term of the court and in connection with the regular record entries then made. It appears from the record itself that such was the case. The two affidavits of counsel for defendant below tend to show that the designated additional certificate of the judge to the bill of exceptions was added by him after it had become a record, but his affidavit and that of the prosecuting attorney strongly corroborated by others are positive to the contrary. As against the record itself we would not be authorized to hold on the showing

made that it had been added to in violation of law. As to those matters contained in the affidavits having no bearing upon the supposed insertion into the record of the certificate objected to, it is proper to say that there is no occasion for their exhibition here. One of the basic principles in the guidance of this court in the determination of causes is that it will look to the record and will not consider affidavits contradicting matters shown by it. The motion to strike out will be denied without reference to the bearing of the matter sought to be eliminated in the consideration of the case.

This case, including the motion just disposed of, has given the court grave concern. The feeling of respect and consideration entertained by the court at all times for the courts and the profession strongly restrains us from saying anything that would savor of harshness, but we can not close our eyes to the painful fact that a very serious matter has been thrust upon us, and we feel it to be a duty to say something about it. The purpose of the affidavits filed in support of the motion, as openly announced by counsel, was to charge the judge with adding, under the influence of bias and prejudice, material matter to the bill of exceptions after it had been settled and become a record in the case. The motion has been disposed of under the guidance of legal rules in the way indicated, and without a decision of the merits of the charge further than was necessary, but it is proper for us to say that nothing here decided is intended to intimate that a party would be without legal remedy in such a supposed case of judicial oppression or wrong-doing. In view of the conclusion reached, it is not of course necessary to now enquire further into what is the legal remedy in such a case. On the other hand, counsel owe certain duties to the court as well as to their clients. They are justified in invoking all ap-

propriate remedies in the protection of the rights of their clients, but they should be careful not to unnecessarily and groundlessly assail the judge and publicly charge him with conduct calculated to bring his administration of the law into disrepute and scandal. To do so will lessen the respect and deference due to the office of a judge, and injure the administration of public justice.

After verdict defendant made a motion in arrest of judgment on the grounds: 1st, that the information was not good and sufficient in law, in that it was not sworn to, as would appear by an inspection of the information itself; 2nd, that while the word "clerk" is attached to the name of the person signing the jurat, there is nothing to indicate what official position, if any, he held, and that in fact the prosecuting attorney did not appear before the person signing the jurat as "clerk," and swear to the contents of the affidavit in any manner. This motion was denied, and in one made for a new trial there was a ground that the information did not have appended to it the oath of the County Solicitor, as required by law, and that defendant was found guilty upon an information containing allegations that were not sworn to as the law required.

The affidavit appended to the information is in the form prescribed by statute (Sec. 2830, Rev. Stat.), with the name of the prosecuting attorney subscribed, and the jurat is signed by "Geo. W. Bristol, clerk." The person named is the clerk of the Criminal Court of Record of Volusia county. It appears from the record that several informations were filed in the case. The one filed at the October term, 1898, was amended at the following December term, and then by leave of court another information was filed to which a demurrer was sustained on the 15th of December, 1898. On

that date the information was filed upon which defend-
ant was tried and convicted. In support of the motions
an affidavit was filed, made by a person not connected
with the trial but present in court, to the effect that
while argument was being heard on the demurrer, the
last information was drawn up, and both it and the
affidavit appended were signed by the prosecuting at-
torney and laid on a desk in front of the judge's stand;
that permission was given to file the information and
the clerk then signed his name to the jurat with the
word "clerk" added; and thereupon defendant was ar-
raigned and the trial proceeded. The affidavit tended
further to show that the prosecuting attorney did not
go before the clerk and swear to the allegations of the
information, though it appears that both the informa-
tion and affidavit were signed in open court where the
clerk was, and in the presence of counsel for the defend-
ant. The 28th section of Article V of the constitution
provides, in reference to Criminal Courts of Record,
that "all offences triable in said court shall be prose-
cuted upon information under oath, to be filed by the
prosecuting attorney, but the grand jury of the Circuit
Court for the county in which said Criminal Court is
held may indict for offences triable in the Criminal
Court. Upon the finding of such indictment the Cir-
cuit Judge shall commit or bail the accused for trial in
the Criminal Court, which trial shall be upon informa-
tion." A form of oath to be made by the prosecuting
attorney and appended to the information is prescribed
by statute. We do not understand counsel for plaintiff
in error to insist that the form of oath prescribed by
the statute is not in compliance with the requirement
of the constitution that the prosecution must be by in-
formation under oath, but the contention is that the
prosecuting attorney, though he signed an affidavit in

the form prescribed by statute, yet he did not in fact make any oath to it, and, probably, further that the failure of the officer signing the jurat to designate the court of which he was clerk, vitiated the affidavit. We are of opinion that defendant must be held to have waived whatever of defect there may have existed in the affidavit appended to the information. The requirement that the information must be under oath is to secure good faith on the part of the prosecuting officer, and the authorities seem to hold generally, under requirements that the information must be sworn to, that an accused must object to a defective affidavit before going to trial, or, at least, before verdict. It was said by Cooley, C. J., in People v. Murphy, 56 Mich. 546, 23 N. W. Rep. 215, that "the information in this case appears to have been verified before the person who at the time held the office of clerk of the court, but in signing the jurat he neglected to attach his title of office. It is therefore assigned for error in this court that the information was fatally defective for want of verification. No such objection was taken before trial and conviction, and it·must therefore be deemed waived." Lambert v. People, 29 Mich. 71; People v. Gardner, 62 Mich. 307, 29 N. W. Rep. 19. We quote from the opinion in Hammond v. State, 3 Wash. 171, 28 Pac. Rep. 334, as follows: "Moreover, in this case, appellant entered his plea of not guilty and went to trial without making any objection to the verification, and it has been held, and, as it seems to us, with good reason, that under such circumstances defendant can not be heard to question the verification of the information on the ground of irregularity or insufficiency for the first time in the appellate court. See State v. Otey, 7 Kan. 69; State v. Adams, 20 Kan. 311, text 318; State v. Blackman, 32 Kan. 615, 5 Pac. Rep. 173. The only object

of the verification is to insure good faith in instituting the proceedings. It bears the same relation to an information in a criminal action that it does to a complaint in a civil action. It is no substantial part of either the one or the other, and we see no reason why it may not be waived without prejudice to any substantial right of the defendant, or why he should not be held to have waived any irregularity or defect therein by not objecting before pleading to the merits." See, also, State v. Ellvin, 51 Kan. 784, 33 Pac. Rep. 547; Hodgkins v. State, 36 Neb. 160, 54 N. W. Rep. 86; Richards v. State, 22 Neb. 145, 34 N. W. Rep. 346; State *ex rel.* Nolan v. Brantly, 20 Mont. 173, 50 Pac. Rep. 410. The failure to swear to the information would undoubtedly cause an abatement of the prosecution on proper showing before trial, but defendant entered the plea of not guilty and raised no objection to the information, or the affidavit attached, until after verdict, and then by motion in arrest of judgment and for new trial.

It is assigned for error that the judge was disqualified to preside at the trial of the case on account of bias and prejudice against the defendant, and that, being so disqualified, he failed to file a suggestion of his disqualification as required by law. This objection was raised in the court below in the motion for a new trial, and in support of it several affidavits were presented to the judge, as shown by the bill of exceptions. There was no counter showing other than the statement of the judge exhibited in that part of the record and bill sought to be stricken out in this court. The affidavits show that for years before the trial bitter animosity and strong prejudice existed between the judge and the accused; that not long before the trial charges had been publicly made against the judge and he thought

they were inspired by the defendant, though made by another. It appears further that not long before defendant was informed against, the judge in a private conversation alluded to the time that would come when he would bring defendant to justice or a court of justice, stated that he was a swindler, and should have been in the State prison long before, and that in the belief of the judge defendant was connected with cow stealing in the county, and nothing would afford the judge more pleasure than to sentence a cow thief; that after defendant was arrested, the judge talked to several persons about the case and stated he now had defendant where he wanted him and would teach him a lesson before the trial was over that he would not soon forget. Beyond any question the affidavits found in the bill of exceptions show the existence of extreme bitter feeling and animosity between the judge and the defendant and that it had become so notorious as to attract the attention of the people generally. Relying upon the assignment of error made, counsel for plaintiff in error insists that the same bias, prejudice or interest that disqualifies a juror will also disqualify a judge, and cite Sections 967, 1086 and 2821, Revised Statutes. Section 967 provides that "no judge of any court shall sit or preside in any cause to which he is a party or in which he is interested, or in which he would be excluded from being a juror by reason of interest, consanguinity or affinity to either of the parties; nor shall he entertain any motion in the cause other than to have the same tried by a qualified tribunal." The portion of Section 1086 applicable provides for an examination of a proposed juror to ascertain whether he is related to either party, or has any interest in the cause, or has expressed or formed any opinion, or is sensible of any bias or prejudice therein, and when it shall ap-

pear to the court that the juror does not stand indifferent in the cause, or is otherwise incompetent, another shall be called and placed in his stead. Section 2821, applicable only to judges of the Criminal Courts of Record, directs that "when the judge is disqualified to try any case, or unable for any reason to hold a term of his court, he shall file a suggestion to that effect with the clerk, who shall immediately notify the Governor, and the Governor shall thereupon assign a judge of some other Criminal Court of Record to try the case or hold the term." The purpose of the section last quoted was not to create or define any disqualification of the judge, but to provide a way for another judge to preside when the regular judge was disqualified under existing rules of law, or unable for any reason to hold a term of his court. The language of this section will not authorize the view that it contains within itself a definition of any disqualification, and to determine when this exists we must look to other sources. Section 967 does define certain disqualifications of all judges in this State, and it is said in Trustees I. I. Fund v. Bailey, 10 Fla. 213, to be declaratory of the common law. The extent of the disqualification of a judge under this section is when he is a party to the suit or interested therein, or when he would be excluded from being a juror by reason of interest, consanguinity or affinity to either of the parties. In the present case the judge was neither a party to the suit, nor was he related to any party connected with it by consanguinity or affinity, and the only ground of disqualification under the statute that can at all be insisted on is the one of interest. It has been held by this court that the interest that disqualifies a judge under the statute mentioned is a property interest in the action or its result, in contradistinction to an interest of feeling, or sympathy,

or bias that would disqualify a juror.   Sauls v. Free-
man, 24 Fla. 209, 4 South. Rep. 525; *Ex parte* Harris,
26 Fla. 77, 7 South. Rep. 1; State *ex rel.* Hart v. Call,
Judge, 41 Fla. —, 26 South. Rep. 1014.   We have
carefully examined, and find no statute making bias or
prejudice a disqualification of a judge of a Criminal
Court of Record.   There are provisions for transferring
civil causes and for substituting one judge for another,
other than in the Supreme and Criminal Courts of Rec-
ord (Secs. 1077, 1078, Rev. Stats.), and also for a trans-
fer of suits in the Circuit Court, County Court, County
Judge's Court or Justice of the Peace Court, on account
of prejudice (Sec 1079), but this section in terms ex-
cludes Criminal Courts of Record, and besides it has
reference only to civil suits.   State *ex rel.* v. King. 20
Fla. 19.   Section 2926, applicable only to criminal cases,
provides that "change of venue may be had only in the
Circuit Court and in cases cognizable therein, and when
the venue is changed from the Circuit Court of a coun-
ty, it shall be changed only to a county in which the
Circuit Court has by law cognizance of the case."   Sec-
tions 2927 and 2928 do not apply to Criminal Courts of
Record, nor do the subsequent enactments of 1893 and
1895, Chapters 4137 and 4394, embrace them.   They
apply only to Circuit Courts.

In Conn v. Chadwick, 17 Fla. 428, Judge WESTCOTT
said that "in the time of Bracton and Fleta a judge
might be refused for good cause, but at the common
law, as administered in England and the United States
for centuries, Judges and Justices could not be chal-
lenged.   There were disqualifying causes, such as in-
terest, and being of kin to the party."   Blackstone says:
"By the laws of England also, in the times of Bracton
and Fleta, a judge might be refused for good cause;
but now the law is otherwise, and it is held that judges

42

or justices can not be challenged. For the law will not suppose a possibility of bias or favor in a judge, who is already sworn to administer impartial justice, and whose authority greatly depends upon that presumption and idea. And should the fact at any time prove flagrantly such, as the delicacy of the law will not presume beforehand, there is no doubt but that such misbehaviour would draw down a heavy censure from those to whom the judge is accountable for his conduct." 3 Blackstone (Hammond), 478. By statute in California a change of venue was authorized when the judge was disqualified, and the grounds of disqualification were when he was a party to, or interested in the suit, or when he was related to either party within the third degree, or when he had been attorney or counsel for either party. The court said in McCauley v. Weller, 12 Cal. 500, in speaking of this statute, "these are the only causes which work a disqualification of a judicial officer. The exhibition by a judge of partisan feeling, or the unnecessary expression of an opinion upon the justice or merits of a controversy, though exceedingly indecorous,, improper and reprehensible, as calculated to throw suspicion upon the judgments of the court and bring the administration of justice into contempt, are not, under our statute, sufficient to authorize a change of venue on the ground that the judge is disqualified from sitting. The law establishes a different rule for determining the qualification of judges from that applied to jurors. The reason of this distinction is obvious. The province of the jury is to determine from the evidence the issues of fact presented by the parties; and their decision is final in all cases where there is a conflict of testimony. * * * The province of a judge is to decide such questions of law as may arise in the progress of the trial. His decisions upon

these points are not final, and, if erroneous the party has his remedy by bill of exceptions and appeal."

A careful consideration of the authorities leads irresistably to the conclusion that mere bias or prejudice was not a ground of disqualification of a judge at common law, and it is clear that our statutes have not included such as grounds of disqualification of Criminal Court Judges under our system. Lovering v. Lamson, 50 Maine, 334; Jones v. State, 61 Ark. 88, 32 S. W. Rep. 81; *In re.* Davis' Estate, 11 Mont. 1, 27 Pac. Rep. 342; People v. Williams, 24 Cal. 31; Turner v. Commonwealth, 2 Met. (Ky.) 619; Allen v. Reilly, 15 Nev. 452; Millison v. Holmes, 1 Ind. 55; Boswell v. Flockheart, 8 Leigh (Va.) 364; Wharton's Cr. Pl. & Pr., Sec. 605.

Should it be made to appear that a judge had from bias or prejudice allowed himself to become the real prosecuting party in the case the question would arise whether he would not be disqualified on the fundamental ground that no one can become a judge in his own case. But under the assignment and contention made we construe the affidavits properly before us as showing nothing more than bias or prejudice, though, as already intimated, they present an extreme case under this head. The judge did not deny any facts contained in the affidavits, but did state that he had no bias or prejudice that would interfere with affording the defendant a fair and impartial trial. If, under the law in force in this State, bias or prejudice was a disqualification of a Criminal Court Judge, it would become necessary to determine the force to be given to the statements of the judge made when the motion for a new trial was overruled, but we find that no legal disqualification existed, and nothing need be said on this point.

We can not refrain from commenting on what is shown by uncontradicted affidavits in reference to the discussion of the case by the judge with people in the county, and it seems to us that the language quoted from the California case has an appropriate application. The respect, dignity and usefulness of the court can not be promoted or preserved by such conduct in the judicial officer.

We are of opinion that the court committed an error in refusing to permit defendant to show by the witness, William H. Morrison, that the Cattlemen's Association of Volusia county provided funds and procured the attendance of the State witness, Jas. Davis, to testify against defendant. A brief reference to the statements of the witness Davis is necessary to show the bearing and relevancy of the rejected evidence. This witness testified that he butchered the cow alleged to have been stolen at defendant's pen in his presence by his direction and after he had been informed of the marks and brands of the animal. The witness states he was employed at the time to butcher cattle for defendant. The butchering of the cow in question took place the last of June or first of July, 1897, and the witness soon thereafter had reason to believe, according to his statement, that defendant had stolen the cow, but he did not recollect telling any one what he knew, or suspected, about it until after the 19th of September, 1898. Sometime after the cow was butchered the witness Davis assisted other parties to drive off some cattle, which he claimed he did in order to detect them in guilt, and it seems that some of these parties were afterwards arrested on a charge of cattle stealing. Davis then went to Palatka and while there, according to his own admission, received twenty-five dollars from a party under prosecution to stay away from the Volusia

court. In August, 1898, he joined the army and went to Huntsville, Alabama, and remained there until the 19th of September of that year when he started for Volusia county. His testimony tended to show that his return to Volusia county, which was but a short time before the first information was filed against defendant, was solely on account of sickness. He was asked at whose request he went back, and stated that he was let off on a sick furlough and that was the reason he went back. It was proven by the witness, Morrison, that he was president of the Cattlemen's Association, organized, he says, either the second Saturday in September or October, 1898, and that one of the objects of the association was to provide funds and procure the presence of Davis to testify against the defendant. Defendant's counsel then asked Morrison the following question: "Is it not true that you did provide the funds at this meeting and did procure the attendance of the witness Jim Davis to attend or come here as a witness against Gad. Bryan? I mean in a legitimate way Mr. Morrison," and the court excluded the question on the objection that it was an attempt to contradict the witness, Davis, on an immaterial issue in the case. The objection impliedly concedes that the testimony would tend to contradict in some particular what the witness had stated. If the association did procure Davis, then absent from the State, to come back and testify in the case, though done in a legitimate way, it would tend directly to contradict his statement that his return was on account of being let off on sick furlough. Questions touching interest, motives, animus, or the status of witnesses to the suit or parties to it, are not collateral or immaterial. As to such matter inquiry may be had and it is not within the discretion of the court to exclude it. In Eldridge v. State, 27 Fla.

162, 9 South. Rep. 448, it was announced, in accordance with the general principle, that a witness could not be cross-examined as to any fact that was collateral and irrelevant to the issue merely for the purpose of contradicting him by other evidence if he should deny it, but that the motives, interest or animus of a witness were not collateral, and could be shown as independent evidence and considered by the jury in estimating credibility. And in the recent case of Wallace v. State, 41 Fla. —, 26 South. Rep. 713, it was said that for the purpose of discrediting a witness a wide range of cross-examination was permissible as a matter of right in regard to his motives, interest or animus, as connected with the cause or with the parties thereto, and upon such matters he may be contradicted. People v. Brooks, 131 N. Y. 321, 30 N. E. Rep. 189. We do not think it was immaterial, under the circumstances of this case to contradict the witness as to his statements about the cause of his return to Volusia county. He had a short time before accepted twenty-five dollars, as he admits, to keep from testifying in another case pending in that county, and when asked in this case at whose request he returned he sought to convey the impression that it was on account of sickness. To what extent he may have been influenced by the action of the Cattlemen's Association, though exerted in a legitimate way, should have been judged of by the jury after a full knowledge of what was done. The influence that brought him back would have a direct bearing upon his motive or interest in returning to testify in the case and whatever was relevant in this direction was material and direct. The question was ruled out on the express ground that it was an attempt to contradict the witness on an immaterial point in the case, and as the testimony was relevant and material, no other ground

of objection can enter into the consideration of the ruling made; nor do we see that any other valid objection could exist. We have no doubt that the court erred in ruling out the proposed testimony on the objection made, and in view of the fact that Davis was a most important witness in the case, and every consideration called for a fair and full test of his credibility, the judgment must be reversed. We are unable to say affirmatively that the error was harmless.

Various other assignments of error are presented in this case, several of which relate to incidental matters connected with the trial that need not occur again, and some are so presented that we can not consider them. As to such matters we express no opinion.

For the error mentioned, the judgment will be reversed and a new trial awarded. Ordered accordingly.