STATE, RESPONDENT, *v.* PETERSON, APPELLANT.

[No. 1505.]

[Submitted April 2, 1900.  Decided April 16, 1900.]

*Criminal Law—Homicide—Indictment and Information— Waiver—Trial—Trial of Issue of Insanity—Practice— Evidence—Question for Jury.*

1.  An objection on appeal to the sufficiency of indictment for want of signature is made too late, since Penal Code, Section 1911, requires that such objection must be made before the defendant demurs or pleads, or the objection is waived.
2.  Under Penal Code, Section 2521, providing that "when an action is called for trial, or at any time during the trial, or when defendant is brought up for judgment on conviction, if a doubt arises as to the sanity of defendant, the court must order the question as to his sanity to be submitted to a jury," etc., the necessity of the trial of such issue of insanity is in the sound discretion of the court.
3.  If the defendant relies upon insanity when the offense was committed that question should be tried by the jury impaneled to pass upon his guilt or innocence of the crime charged; if his sanity at the time of arraignment or trial is judicially doubted, the court should try that question, under Section 2521 of the Penal Code, by a special inquiry.
4.  Accused testified that he and deceased were partners, and, while walking near their cabin, deceased abused him about some previous occurrence; that deceased told him to stop right there, or he would kill him; that he broke off a pole and started after defendant, and knocked him down; that he lay there for some time in pain, afraid and unable to get up; that, when deceased turned to go, he got up and fired the shots; that deceased had, for the space of three years, treated him cruelly and unreasonably, and had threatened to kill him. *Held,* that defendant's evidence was a sufficient foundation for the introduction of proof that deceased had repeatedly attempted to strike defendant, who made no resistance and never offered remonstrance, to show fear of great bodily harm.

*Appeal from District Court, Ravalli county; Frank H. Woody, Judge.*

NELSON PETERSON was convicted of murder in the first degree, and appeals.    Reversed.

*Mr. C. B. Calkins* and *Messrs. Crutchfield & Draffen*, for Appellant.

*Mr. C. B. Nolan, Attorney General*, for the State.

Complaint is made by counsel for appellant to the action of the court in refusing to admit testimony on the part of the defendant showing former beating, cruelty and ill treatment of the defendant by the deceased, and error is assigned on account of the ruling of the court excluding this testimony.

At the time the evidence was offered, the evidence already introduced in the case, and in fact the testimony of the defendant himself, showed that at the time of the fatal shooting the deceased was retreating or had retreated, and was not making any motion or movement which would induce the defendant to believe that the deceased intended to renew the attack. The court held that evidence of threats could not be received under the circumstances for the purpose of sustaining a plea of self-defense. This was not error, but eminently correct. The mere naked threats made by the deceased against the accused are not admissible in evidence either to justify or mitigate the homicide where there is no evidence to any overt act on the part of the deceased at the time of the killing indicating his intention to carry his threats into execution. Evidence of threats by the deceased offered for the purpose of proving that the prisoner had the right to kill deceased, there being no proof of a hostile demonstration by the latter is equally inadmissible. No man has the right to kill another simply because the latter has made threats against him. The law will not justify homicide unless it is shown that the slayer was at the time of the killing in apparent imminent danger of losing his life, or of sustaining serious bodily injury, and previous threats, however violent, do not afford any reasoable ground for apprehending such danger, where they are unaccompanied by overt acts showing an intention to carry them into immediate effect. This is the undisputed rule. (Wharton Crim. Evidence, 9th Ed., Sec. 757; *Hughey* v. *State*, 47 Ala. 97; *Payne* v. *State*, 60 Ala. 80;

*Roberts* v. *State*, 68 Ala. 153; *Green* v. *State*, 69 Ala. 6; *People* v. *Scoggins*, 37 Cal. 676; *People* v. *Taing*, 53 Cal. 602; *People* v. *Iams*, 57 Cal. 115; *People* v. *Campbell*, 59 Cal. 243; *People* v. *Tamkin*, 62 Cal. 468; *People* v. *Westlake*, 62 Cal. 303; *Hawkins* v. *State*, 25 Ga. 207; *Peterson* v. *State*, 50 Ga. 142; *State* v. *Leonard*, 6 La. An. 420; *State* v. *Mullen*, 14 La. An. 570; *Turpin* v. *State*, 55 Md. 462; *Evans* v. *State*, 44 Miss. 762; *Holly* v. *State*, 55 Miss. 424; *Kendricks* v. *State*, 55 Miss. 436; *State* v. *Brown*, 64 Mo. 367; *State* v. *Alexander*, 66 Mo. 148; *State* v. *Harris*, 73 Mo. 287; *State* v. *Hall*, 9 Nev. 58; *State* v. *Talbert*, 8 Tex. App. 316; *Sims* v. *State*, 9 Tex. App. 586; *Thomas* v. *State*, 11 Tex. App. 315; *United States* v. *Leighton*, 13 N. W. Rep. 347.

Where it is clearly and unequivocally shown that the defendant was the aggressor, and there is no pretense that deceased was about to carry the threats into execution, or that defendant had reasonable ground to believe and did believe that such was the case, evidence of such threats by deceased, although they were communicated to defendant, is inadmissible. (*Payne* v. *State*, 60 Ala. 80; *People* v. *Taing*, 53 Cal. 602; *Bond* v. *State*, 21 Fla. 738; *Lawrence* v. *Commonwealth* (Ky.), 9 S. W. Rep. 165; *People* v. *Garbutt*, 17 Mich. 9; *State* v. *Downs*, 91 Mo. 19; *State* v. *Clum*, 90 Mo. 482; *Gonzales* v. *State*, 31 Tex. 495; *Territory* v. *Halliday* (Ut. Tr.), 17 Pac. Rep. 118; *State* v. *Birdwell*, 36 La. Ann. 859; *Moriarity* v. *State*, 66 Miss. 654.) The law is established that where there is no evidence presenting the question of self-defense, or tending to show that the killing was done under other circumstances which would justify or excuse it, the court may properly omit or refuse to instruct the jury as to excusable or justifiable homicide. (*Taylor* v. *State*, 48 Ala. 180; *Waller* v. *State*, 89 Ala. 79; *People* v. *Gatewood*, 20 Cal. 146; *Brown* v. *State*, 18 Fla. 472; *Ramsey* v. *State*, 92 Ga. 53; *Jarrell* v. *State*, 58 Ind. 293; *Combs* v. *Commonwealth*, 9 S. W. Rep. 655; *State* v. *Mitchell*, 41 La. Ann. 1073; *State* v. *Sneed*, 91 Mo. 552; *State* v. *Wilson*, 98 Mo. 440; *State* v. *Kloss*, 118 Mo. 591; *State* v. *McCollum*, 119 Mo. 469; *State*

v. *Parker*, 106 Mo. 217; *State* v. *Crawford*, 115 Mo. 620;
*Thompson* v. *Territory*, 4 New Mex. 150; *Territory* v. *Baker*,
4 New Mex. 117; *Honeycutle* v. *State*, 8. Baxt. (Tenn.) 371;
*Varnell* v. *State*, 26 Tex. App. 56; *Allen* v. *State*, 24 Tex.
App. 216; *Miller* v. *State*, 27 Tex. App. 63; *Sherar* v. *State*,
30 Tex. App. 349; *Cavail* v. *State*, 25 S. W. Rep. 628;
*White* v. *State*, 23 Tex. App. 154; *Cook* v. *State*, 22 Tex.
App. 511; *Hooper* v. *State*, 29 Tex. App. 614; *Warren* v.
*State*, 31 Tex. Crim. Rep. 573; *Boyd* v. *State*, 28 Tex. App.
37; *Hodges* v. *Commonwealth*, 89 Va. 265; *U. S.* v. *Arm-
strong*, 2 Curt. (U. S.) 446; *Mattison* v. *State*, 55 Ala. 224;
*Ford* v. *State*, 71 Ala. 385; *Whitaker* v. *State*, 79 Ga. 87;
*Osburn* v. *State*, 87 Ga. 173.) If under the record in this
case, and the testimony therein set forth, the court would
have been justified in refusing to instruct the jury with refer-
ence to the law of self-defense, an instruction upon this sub-
ject, however great the error contained in the instruction,
would have been an unnecessary instruction, and no error can
be predicated upon the giving of an unnecessary instruction.
The principle has been firmly established that where it is ap-
parent that the instruction given has been unnecessary, the
giving of such an instruction though error will not operate
to reverse. (*People* v. *Cochran*, 61 Cal. 548; *State* v. *Dur-
bin*, 22 La. Ann. 154; *Daniels* v. *Western R. R. Co.*, 96 Ga.
786; *Berry* v. *Mo. Pac. R. R. Co.* 124 Mo. 223; *Waters* v.
*Shafer*, 25 Neb. 225; *Labaree* v. *Klosterman*, 33 Neb. 150;
*Petrie* v. *Columbia R. R. Co.*, 29 S. C. 303; *Gulf R. R. Co.*
v. *Greenlee*, 70 Tex. 553; *Ft. Worth R. R. Co.* v. *Peters*, 7
Tex. Civ. App. 78; *Johnson* v. *McKee*, 27 Mich. 471; *People*
v. *Riley*, 65 Cal. 107.)

PER CURIAM.   Appellant was convicted of murder in the
first degree.   He appeals from the judgment and order deny-
ing his motion for a new trial.

1.   It is said no legal information was filed against defend-
ant.   The record shows the following facts:

"Journal Entry.   September 11, 1899.

"The county attorney and the defendant, with his counsel, C. B. Calkins, Esq., came into court. The county attorney now informs the court that the information herein heretofore filed was not signed, and asks leave of the court to sign it. Counsel for defendant objects, which objection is overruled by the court. Defendant excepts to the ruling of the court, whereupon the county attorney signed the information. The defendant was then arraigned. Answering the question of the court, says that his true name is Nels Peterson. Then, by his counsel, defendant expressly waives the reading of the information and the statutory time for pleading thereto, and signifies his readiness to plead at this time. In answer to the court, defendant pleads that he is not guilty of the offense charged. Defendant then, by his counsel, expressly waives the statutory time for preparing for trial, and announces to the court that he is ready to be tried on the date heretofore by this court fixed, whereupon it is ordered by the court that this cause be, and the same is hereby, set down for trial."

An information must be presented and signed by the county attorney. (Section 1372 of the Penal Code.) And when not subscribed by the county attorney, or attorney prosecuting, it will be set aside by the court in which the defendant is arraigned, upon his motion. (Section 1910 *Id.*) It is expressly provided, however, that the motion to set aside the information on the ground of such a lack of proper subscription must be made before the defendant demurs or pleads, or the grounds of the objection are waived. (Section 1911 *Id.*) No motion was made before defendant pleaded, as the statute demands. This omission was a waiver by the defendant, and the objection to the action of the court in allowing the information to be subscribed cannot avail now. It clearly became a good information before the arraignment of September 11th, *supra.* (*State* v. *McCaffery*, 16 Mont. 33, 40 Pac. 63; *State ex rel. Nolan* v. *Brantly*, 20 Mont. 173, 50 Pac. 410.)

2. Defendant's counsel argue that the court erred in not submitting the question of defendant's sanity to a jury, under Section 2521 of the Penal Code. We quote that section:

"When an action is called for trial, or at any time during the trial, or when the defendant is brought up for judgment on conviction, if a doubt arises as to the sanity of the defendant, the court must order the question as to his sanity to be submitted to a jury, which must be drawn and selected as in other cases; and the trial or the pronouncing of the judgment must be suspended until the question is determined by their verdict, and the trial jury may be discharged or retained, according to the discretion of the court, during the pendency of the issue of insanity."

This provision of the law is to make effectual the humane principal that no person can be tried, adjudged to punishment, or punished for a public offense while he is insane. But it never was intended that a trial of the issue of guilt or innocence of the crime under investigation shall be arrested simply because the defendant seeks to avoid a trial on the ground of present insanity. If doubt as to the sanity of the defendant arises at any of the stages mentioned in the statute, it must exist in the mind of the court, before the question of defendant's insanity will be inquired into as an independent matter; but such a doubt does not necessarily present itself by the mere assertion of the defendant that he is insane, or even by introduction of witnesses on the trial who swear they do not believe him to be of sound mind. The question whether a doubt exists is one that addresses itself peculiarly to the sound discretion of the trial court. To it must be presented the reasons for asking that such an inquiry be had, or of its own motion the court may institute the investigation, and to its own sound judgment is left the decision of the wisdom of having it. ( *Webber* v. *Com.*, 119 Pa. St. 223, 13 Atl. 427; *People* v. *Pico*, 62 Cal. 50; *People* v. *Lee Fook*, 85 Cal. 300, 24 Pac. 654; Bishop Cr. Proc. Sec. 667.)

By the common law, if it be doubtful whether a criminal who appears to be insane at his trial be such in fact or not, the issue of his sanity must be tried by the jury charged with the trial of the indictment, or by pleading *ore tenus*, and a venire awarded, in the nature of an inquest of office; (1

Whart. Cr. Law, Sec. 58), but, where the two methods are open, judicial discretion is implied. The practice under the Codes should be this: If the defendant relies upon insanity when the offense was committed, that question should be tried by the jury impaneled to pass upon his guilt or innocence of the crime charged, while, if his sanity at the time of arraignment or trial is judicially doubted, the court should try that question, under Section 2521, *supra,* by a special inquiry.

After reading the evidence adduced on the trial in support of the defendant's plea of insanity, we are unable to say that the case was one where the court ought to have ordered a preliminary inquiry into the sanity or insanity of the defendant. Therefore no error was committed.

3. Defendant was a witness in his own behalf, and admitted the killing. His version was that he and deceased were partners; that on the day of the homicide the two walked from their cabin up to a mountain near by; that he had a gun; that deceased started to abuse him about some affair that had transpired a week before; that the deceased told the defendant to stop, or he would kill him right there; that deceased broke off a pole and started after defendant, ran after him, struck him, and knocked him down; that he lay where he had fallen for half an hour or so; that he was in pain, and was afraid and unable to get up; that deceased was by him, talking to him, and thought that he had killed him; that the deceased was going away from him, when he jumped up, fired once at him, and then twice more; that deceased often gave him many licks; that he had taken all the proceeds of their joint crop the year previous; that he was afraid to leave deceased; that on one occasion deceased had abused him and struck him with a fence post, and hurt him badly; that deceased had frequently threatened to kill him; that deceased had said he could kill him; that he used to have two kinds of bread in the house, and made defendant eat the poorer, while he eat the better; that, on complaint of this treatment, deceased had knocked defendant down; and that deceased was very strong. On cross-examination, defendant said: That he was excited

when he shot deceased. That deceased was not far from him—a few rods—when he first shot him. That he did not know what he was doing when he fired the second and third shots. "I was lying there, and I just tried to get up. Then, when I got up and walked around, he was a little way from me, and he told me he would give me a lick; and I fired the first shot, and then two more." Defendant also testified that at the time deceased ran after him, he himself had the gun, and that after the killing he had told falsehoods about his movements and the occurence. There was evidence on the part of other witnesses for the defendant to the effect that the deceased was a very large man and a very strong one, and that he was peaceable towards everyone except the defendant. A witness who had known the deceased and the defendant for several years was then asked to testify concerning cruelty and ill treatment received by the defendant at the hands of the deceased. The state objected, and the court sustained the objection upon the ground that the evidence already introduced showed that at the time of the killing deceased was retreating, or had retreated, and was not making any motion or movement which would induce the defendant to believe that the deceased intended to renew the attack. The defendant's counsel then made a formal offer of proof that at various times during a period of three years the deceased had attempted to strike the defendant, who made no resistance and never offered remonstrance; the object of this testimony, being to show, among other things, that the defendant was afraid that the deceased would kill him. The court sustained an objection, and defendant excepted. Evidence was then introduced tending to show that the defendant was a man of very weak intellect; that he had great difficulty in collecting his thoughts; that he was incoherent of speech, and unable to comprehend what he was told to do. This evidence was allowed to go to the jury.

The ruling upon the first branch of the case is assigned as error. We are constrained to hold that the defendant's position is well taken, and that the case must be remanded for a

new trial. The defendant's testimony is all that there is of the killing itself. In our judgment, it was sufficient to have required the court to allow the jury to say whether or not, considering all the facts and circumstances, the defendant, at the time that he killed deceased, had reason to believe that the deceased meant to do him further great bodily harm, and that the danger was imminent. The point under investigation would be much more difficult of decision, were it not for the fact that just before the killing, as testified to by the defendant, the deceased told defendant that he would kill him right there; that he followed up that threat by breaking off a pole, ran after him, knocked him down, and put him in great fear, and again said he would give him a lick. The story of the defendant may be absolutely false,—we cannot weigh the evidence, or pass upon his credibility as a witness,—but it laid a foundation for the introduction of evidence, under the plea of justifiable homicide, which would tend to show that for years the defendant had been cruelly treated by the deceased; that he had often been physically hurt by him; that he was afraid of deceased, and that, in the light of the assault and threat made just before the killing, he believed that there was a design on deceased's part to do him great bodily injury; and that there was imminent danger of such design being accomplished. The question of the sufficiency of this evidence was for the jury, not for the court. There is some incoherency in the several statements of the defendant, but the court could not say it was clear from all of his evidence that he was the aggressor, and that deceased was not about to do him further great bodily harm when he shot him, or that defendant had no reasonable ground to believe, and did not believe, that such was the case.

The learned judge who tried the case must have thought there was sufficient room for the plea of justifiable homicide or self-defense, inasmuch as he instructed upon that phase of the law. We think he was correct in his final belief, but that he overlooked the bearing of the testimony offered to sustain the plea.

Numerous errors are assigned, based upon erroneous charges to the jury upon the law of self-defense, burden of proof, malice and insanity. It is not necessary to discuss the questions raised, as we advise that the statutes upon homicide be followed more closely upon the next trial than they were on the last. Our Codes are quite comprehensive upon the subject, and adherence to them and their definitions is generally wise. Recent decisions upon the defense of insanity will guide the court in that respect. (*State* v. *Peel*, 23 Mont. 358, 59 Pac. 169; *State* v. *Brooks*, 23 Mont. 146, 57 Pac. 1038.)

Judgment reversed, and cause remanded for a new trial.

*Reversed and remanded.*