STATE, RESPONDENT, *v.* NARICH, APPELLANT.

(No. 6,894.)

(Submitted February 15, 1932. Decided March 26, 1932.)

[9 Pac. (2d) 477.]

18

*Mr. John A. Shelton, Mr. M. J. English, Mr. William B. Frame* and *Mr. M. J. Doepker,* for Appellant, submitted a brief; *Mr. Frame* and *Mr. Doepker* argued the cause orally.

*Mr. L. A. Foot,* Attorney General, and *Mr. T. H. MacDonald,* Assistant Attorney General, for the State, submitted a brief; *Mr. MacDonald* argued the cause orally.

MR. JUSTICE GALEN delivered the opinion of the court.

In this case the defendant, on his plea of not guilty, was regularly tried and convicted of the crime of murder in the first degree; the jury by its verdict leaving the punishment to be fixed by the court. When called upon by the court on December 10, 1930, to state any legal reason why judgment should not be by the court pronounced upon him in accordance with the verdict, his counsel interposed objection that, according to the provisions of section 12213 of the Revised Codes of 1921, he should not be sentenced by reason of the fact alleged that he was then insane. Thereupon the court set for hearing at a later hour on the same day the question of the sanity of the defendant, at the conclusion of which hearing the court announced that there were no reasonable grounds for believing the defendant to be insane, which was abundantly justified by the evidence, and proceeded at once to pronounce sentence upon the defendant that he be confined in the state prison for the period of his natural life. Judgment was entered accordingly on December 11, 1930, and, the court having denied the defendant's motion for a new trial, the case is now before us on appeal from the judgment and from the order denying him a new trial.

It appears that on the afternoon of July 21, 1930, about 5:30, the defendant entered a "soft drink" resort known as the Ford Hotel Parlor on the southeast corner of Main and Silver Streets, on Main Street in the city of Butte. He was a stranger to all of the persons hereinafter mentioned in that hotel. Nick Russos was conducting the drink parlor in the hotel, and together with Mrs. Susie Parker, with whom he roomed, they not being married, was conducting the hotel and drink parlor. Blanche Bailey was in the barroom, and the defendant invited her to join him in a drink. They both partook of "near beer." The defendant fondled her and suggested that they go to bed. She repulsed him and left him, ascended the stairway leading to the second floor, and went to a room where Mrs. Parker was engaged in cooking,

the room being a combination kitchen and dining-room. Dan Tedor was at the time in the room with Mrs. Parker. The defendant followed Mrs. Bailey, and, on entering the room, asked all present to join him in a drink. Drinks were served. Defendant's evidence is to the effect that it was moonshine whisky, while the state's testimony is to the effect that it was "near beer." When the defendant went to the upstairs apartment he had $5.50 in cash on his person, which in a short time was reduced to the sum of 50 cents. There was no quarrel or angry words of any kind. The defendant asked to be given a room, and Mrs. Parker said that he could have a room, but that he must pay in advance. He stated that he would pay when he was ready, to which she replied that she knew he would. She said to him, "You go on and get out of here." He left the room, but a few moments afterwards returned and knocked at the door. Mrs. Parker responded and opened the door. The defendant stood at the door, and at once attacked her with a knife, cutting her throat and also her right forearm. She staggered back, and Mrs. Bailey advanced towards the defendant, who also stabbed her in the neck. He then rushed out of the room, knife in hand, upset a chair in the hallway, and proceeded down the stairs and onto Silver Street. He ran for a block on Silver Street, pursued by Nick Russos and Eddie Edwards, and was by them apprehended on the corner of Wyoming and Silver Streets and brought back to the Ford Hotel. When apprehended, he threatened his pursuers with the knife, and Russos knocked it from his hand and recovered it. The knife was covered with blood, and was in evidence at the trial. The police having been called, the defendant and his knife were turned over to them, and he was taken to the city jail. Transportation was called to take Mrs. Parker and Mrs. Bailey to St. James Hospital. They were taken in separate conveyances. Mrs. Parker was found to be dead on the arrival of the ambulance at the hospital, and Mrs. Bailey was there confined because of her injuries for a period of about two weeks. The defendant testified that he must have been drugged, for, after tak-

ing the drinks, he had a lapse of memory, and did not come back to normal for about four days, and that he has no recollection of having committed the crime.

The defendant's insanity was relied upon in defense, and, unless it was established to the satisfaction of the jury by a preponderance of the evidence, there is an abundance of proof to uphold and justify the verdict and judgment. The defendant has assigned many alleged errors as reason for granting him a new trial, all of which have been reviewed and carefully considered, and, in our opinion, there are but two questions involved worthy of serious consideration in disposition of this appeal, viz., (1) Did the court err in giving its instruction number 26 to the jury? And (2) Did the court err in excluding the testimony of Helen Susang, a witness for the defendant, as to the reputation of the Ford hotel?

1. The jury were instructed by the court, by instruction No. 26, complained of by the defendant, as follows: "You are instructed that if, from all the evidence in the case, you believe, beyond a reasonable doubt, that the defendant committed the crime of which he is accused, in manner and form as charged in the information, and further find that (at) the time of the commission of such crime the defendant knew that it was wrong to commit such crime, and was mentally capable of choosing either to do or not to do the act or acts constituting such crime, and of governing his conduct in accordance with such choice, then it is your duty, under the law, to find him guilty, even though you should believe from the evidence that at the time of the commission of the crime he was not entirely and perfectly sane."

The defendant's contention at the trial was, and now is, that this instruction was confusing to the jury, in that it permitted the jury to find the defendant guilty, although it should believe that, at the time of the commission of the crime, the defendant was not sane; and further that, even though possessing volition capable of governing his conduct, yet, by the infirmities of mental disease, the defendant might at the time have been possessed of an irresistible impulse

which would govern his choice to such a degree that he would be, by reason of such infirmity, not responsible. There is no merit in this contention. This instruction is somewhat confusing, but it must be considered in connection with, and in the light of, other instructions given by the court on the subject without objection. So viewed, we find that the jury was further instructed by the court "that insanity, in the criminal law, is any defect, weakness or disease of the mind rendering it incapable of entertaining, or preventing its entertaining, in the particular instance, the criminal intent which constitutes one of the elements of every crime. When one who commits an act which would be criminal if done by a sane person, does not know the difference between right and wrong, or, knowing it, is mentally unable to refrain from doing the wrong, he is unable to form a criminal intent and cannot be guilty of crime." Again "that insanity, in criminal law, is any defect, weakness or disease of the mind rendering it incapable of entertaining, or preventing its entertaining in the particular instance, the criminal intent which constitutes one of the elements of every crime, and if the defendant had not sufficient reason to be able to judge of the consequence of his act, or was so far deprived of volition or self-control by the overwhelming violence of mental disease that he was not capable of voluntary action, and therefore not able to choose the right and avoid the wrong, he was not responsible for any act committed by him while in this condition." And, further, "that in order to be criminally responsible, a person must have intelligence and capacity to have criminal intent and purpose; and if his mental powers are so deficient that he has no will, or no conscience, or no controlling mental power, or if, from the overwhelming violence of mental disease, his intellectual power is, for the time, obliterated, he is not criminally responsible, the question to be determined being whether, at the time of the act, he had the mental capacity to entertain a criminal intent, and whether in point of fact he did entertain it." In all, the court gave twelve different instructions covering the defense of insanity.

"In every crime or public offense there must exist a union or joint operation of act and intent, or criminal negligence." (Sec. 10726, Rev. Codes 1921.) "The intent or intention is manifested by the circumstances connected with the offense, and the sound mind and discretion of the accused. All persons are of sound mind who are neither idiots nor lunatics, nor affected with insanity." (Id., sec. 10727.) And an insane person is not capable of committing a crime. (Id., sec. 10729.)

Insanity constitutes any defect, weakness or disease of the mind which renders it incapable of entertaining in the particular instance the necessary criminal intent which is a necessary ingredient of all crimes. (*State* v. *Peel,* 23 Mont. 358, 75 Am. St. Rep. 529, 59 Pac. 169, 173.)

In the case just cited Mr. Chief Justice Brantly, speaking for this court, quoted approvingly the language of Mr. Bishop in his work on Criminal Law to the effect that "insanity, in the criminal law, is any defect, weakness, or disease of the mind rendering it incapable of entertaining, or preventing its entertaining in the particular instance, the criminal intent which constitutes one of the elements in every crime"; and said: "From this definition of insanity, criminal responsibility is to be determined solely by the capacity of the defendant to conceive and entertain the intent to commit the particular crime. If there is no intent, there is no crime."

In a case where insanity is urged as a defense, the commission of the crime being proven beyond a reasonable doubt, "the particular technical phase of insanity from which the defendant suffered when he committed the act (if he was in fact insane) is utterly immaterial to the jury; they do not know nor care what the alienists may call it; their desire should be, and their duty is, to ascertain whether the defendant committed the act with a criminal intent; if he did, he is guilty; if he did not, he is not guilty by reason of insanity." (*State* v. *Keerl,* 29 Mont. 508, 101 Am. St. Rep. 579, 75 Pac. 362, 367.) And an instruction to the jury defining insanity as "any defect, weakness or disease of the mind, ren-

dering it incapable of entertaining, or preventing its entertaining in the particular instance the criminal intent which constitutes an element of every crime,'' and declaring that, if the defendant was incapable of choosing the right and avoiding the wrong, he was not responsible for any act committed by him while in this condition, correctly states the law. upon the subject. (*State* v. *Leakey*, 44 Mont. 354, 120 Pac. 234; see, also, *State* v. *Crowe*, 39 Mont. 174, 18 Ann. Cas. 643, 102 Pac. 579.)

''No act committed by a person while in a state of voluntary intoxication is less criminal by his being in said condition. But, whenever the actual existence of any particular purpose, motive, or intent, is a necessary element to constitute any particular species or degree of crime, the jury may take into consideration the fact that the accused was intoxicated at the time, in determining the purpose, motive or intent with which he committed the act. When the commission of the act charged as a crime is proven, and the defense sought to be established is the insanity of the defendant, the same must be proven by the defendant by a preponderance of the testimony; provided, however, that said defendant may have his sanity or insanity determined in the manner provided by law, by requesting the district court to determine the same, at any time before the jury is obtained.'' (Sec. 10728, Rev. Codes 1921, as amended by Chapter 87, Laws of 1925.)

Returning now to a consideration of the instructions given by the court to the jury on the question of the defendant's alleged insanity, with these settled principles of law before us, it will be seen that the instructions given to the jury in this case fully and fairly present the law applicable to the evidence, although instruction No. 26, standing alone, would be objectionable.

Trial courts should observe the suggestion of our present ▆ Chief Justice when serving as a commissioner of this court, and speaking for the court, in the case of *State* v. *Keerl,* supra, as to simple and proper instructions to be given to a jury on the issue of insanity. In that case it is said: ''Recog-

nizing the general doctrines asserted in the *Peel Case* as correct, we are of the opinion that the result sought to be obtained, to wit, a solution of the question whether the defendant, when he committed the act for which he is on trial, had the mental power to entertain a criminal intent, and did entertain it, can be reached best by submitting to the jury a test founded solely upon statute. The question for determination being, was the defendant, when he committed the act, sane, or affected with insanity? the court should give to the jury the appropriate sections of the statute, at the same time defining insanity in accordance with Bishop's definition, as supplemented by this court's comment thereon in the *Peel Case*, or make use of equivalent language. We doubt if any other or further instructions on the subject of insanity are necessary or useful. (*State* v. *Pike* [49 N. H. 399, 6 Am. Rep. 533], supra; *State* v. *Jones* [50 N. H. 369, 9 Am. Rep. 242], supra.) The jury may determine the fact from the testimony adduced before it, no matter what may be the character of the insanity attributed to the defendant. This includes, of course, insane delusions and insane irresistible impulses." In our opinion, the defendant was in no manner prejudiced by the giving of the instruction complained of, in view of the other instructions of the court given, elaborating on the subject. In the trial of such cases in the future, district courts are admonished to make their instructions to juries as plain and simple as possible, and to avoid numerous instructions on the subject, as too many given are confusing and serve no useful purpose. One or two given in the ordinary case should be sufficient.

2. In defense, Helen Susang was called as a witness, and by ▮ defendant's attorney was asked the following questions, without previous qualification: "Do you know what was the reputation of that place (the Ford Hotel) on July 21, 1930; as to its being a place where holdups were habitually carried on or not?" To which the state objected on the ground that the evidence proposed to be elicited by the question was incompetent, irrelevant and immaterial, and called for the conclusion of the witness; that the reputation of the Ford Hotel

is not an issue in the case. The court sustained the objection, and thereupon counsel for the defense made an offer of proof as follows: "The defendant offers to prove by the witness Helen Susang, that she knows the reputation which the Ford Hotel at 302 S. Main Street, Butte, Mont. had on July 21, 1930, as being a place where holdups were frequently perpetrated by the proprietors or not at all, and that such reputation is bad." Counsel for the state objected to the offer of proof "upon the ground that the same is incompetent, irrelevant and immaterial, collateral, not within the issues of this case; and it calls for the conclusion of the witness; the reputation of the Ford Hotel is not in issue here." The court sustained the objection, and denied the offer of proof.

As noted above, the witness had not shown herself to be qualified to testify respecting the reputation of the Ford Hotel, and the question asked, as well as the offered proof, is not only irrelevant, but is incoherent, leading, and suggestive. Moreover, the reputation of the place where the crime was committed was not a proper matter to be considered by the jury either in defense or mitigation, since the defendant relied solely upon insanity by way of defense. While, in actions for the abatement of a premise because so conducted as to constitute a public nuisance, evidence of the general reputation of the place is admissible (*State* v. *Mercier*, 70 Mont. 333, 225 Pac. 802; *State ex rel. Lamey* v. *Young*, 72 Mont. 408, 234 Pac. 248), it can have no possible bearing here on the question as to whether the defendant committed the crime of murder as charged. Here the reputation of the premises, whether good or bad, could have no possible bearing on the question before the court as to whether the defendant was at the time of the homicide sane or insane, and the court did not err in excluding it.

The judgment and order are affirmed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUCTICES FORD, ANGSTMAN and MATTHEWS concur.