THE STATE OF MONTANA, Plaintiff and Respondent, *v.* MACK KITCHENS, alias HERBERT ABBOTT, alias FRANK PETERSON, alias HARRY HARRINGTON, Defendant and Appellant.

No. 9539.
Submitted June 6, 1955. Decided August 5, 1955.
286 Pac. (2d) 1079.

332

Michael J. Whalen, Billings, for appellant.

Arnold H. Olsen, Atty Gen., Emmet T. Walsh, Asst. Atty. Gen., Arnold A. Berger, County Atty., Billings, for respondent.

Mr. Whalen and Mr. Walsh argued orally.

MR. JUSTICE DAVIS:

The appellant Kitchens was found guilty of forgery after a trial by jury in the district court for Yellowstone County. From the final judgment sentencing him to imprisonment for five years at hard labor he has appealed.

The information charges in substance that on July 31, 1954, ▇ Kitchens feloniously passed a traveller's check for $20, which was forged in the name of one C. J. Hanson and drawn in blank on the Bank of America National Trust & Savings Association of San Francisco, California. The plea was not guilty.

The trial took up on November 29, 1954, and concluded with the jury's verdict of guilty returned on November 30, 1954. The evidence for the state tends to sustain the charge made. The defense was insanity. The evidence offered to sustain that defense was wholly documentary. The defendant did not take the stand; and so far as the record discloses he took no part in the trial, and in no way recognized his court-appointed counsel, who diligently protected his rights there and has now brought his appeal here, where in his brief before us he has specified twenty-two errors going to the merits of the case.

At the threshold of our review, however, we meet the question whether consistent with R. C. M. 1947, section 94-9301, Kitchens could be tried and sentenced at all under this information, until first there had been had the inquiry into his sanity which R. C. M. 1947, section 94-9302, contemplates in the case there specified. We think not.

We conclude accordingly that the trial judge was in error in not halting the trial before verdict and judgment and thereupon submitting forthwith on his own motion to another jury the issue whether Kitchens was at the time mentally competent to understand the proceedings against him and to assist in his defense. For from the record it appears to us with certainty that during the trial in the district court there arose as a matter of law a doubt touching Kitchens' sanity which required the trial judge himself to act as section 94-9302 requires, even though neither the defendant nor his counsel suggested the question.

The pertinent facts upon which we base this conclusion, all of which came to the attention of the trial judge, were these: On April 21, 1954, the district court for Cascade County, Montana, proceeding under R. C. M. 1947, sections 38-201 to 38-214, inclusive, after a hearing adjudged Kitchens insane and so far disordered in his mind as to endanger his health, person and property, and the personal safety of citizens and residents of Cascade County. Thereupon that court, Judge C. F. Holt presiding, committed him to the Veterans' Hospital at Sheridan, Wyoming, pursuant to the authority of R. C. M. 1947, section 91-4818. The record is barren of any suggestion that a certificate by the chief officer of that hospital as he is designated in section 91-4818, or for that matter by any other official there, was ever made as R. C. M. 1947, section 64-112, requires when a patient committed as was Kitchens is discharged, released or paroled. Nor does it appear anywhere that proceedings to restore Kitchens to sanity were ever had under R. C. M. 1947, section 91-4704.

But this is not all. On December 2, 1952, the Honorable W. D. Murray, district judge sitting in the United States District Court for Montana, at Butte, likewise after a hearing had and upon the motion of the United States district attorney judicially determined that Kitchens was insane and so mentally incompetent as to be unable to understand the proceedings taken against him under an indictment pending in that court, or properly to assist in his defense against that indictment, which charged him with some fourteen violations of Title 18, U. S. Code, sections 1708, 495. Consistent with this finding Judge Murray thereupon, as it appears in the record, committed Kitchens under the federal statutes for detention as a mentally incompetent person. Under this commitment he was thereafter held for a time at the United States Medical Center, Springfield, Missouri, for mental treatment and examination.

While so confined Kitchens sued out a writ of habeas corpus in the United States District Court for the Western District of Missouri before the Honorable Albert A. Ridge, United States

District Judge, and thereon had a further examination into his mental condition before the federal court at Kansas City, Missouri. Judge Ridge's opinion and findings consequent upon this hearing are reported in Kitchens v. Steele, 112 F. Supp. 383, 384.

This opinion, which was handed down on May 12, 1953, begins with this significant finding: "Petitioner [Kitchens], concededly permanently insane, * * * ". From this opinion it appears that the predicate for this finding is a detailed report made by the neuropsychiatric staff of the Federal Medical Center at Springfield, dated February 20, 1953, in which it is recited by way of conclusion that the staff there "concurred in the previous diagnosis of petitioner as 'paranoid schizophrenia and agreed that the patient remained mentally incompetent.'"

Further in support of his opinion and this finding it appears that Judge Ridge also considered an earlier report of January 26, 1953, by the staff psychiatrist at the Medical Center, a certified copy of which is also in the record brought here from the trial court. Therein by way of conclusion the examining psychiatrist gives this summary of Kitchens' mental capacity:

"* * * he has not recovered or reconstituted from his psychosis. His concept of right and wrong are at gross variance with his society, and he thus does not know right from wrong and cannot comprehend the existing laws and customs. He could be able to cooperate with counsel to the extent of relating his story. However, he could not apply his experience towards utilizing proper defense. For example, it would not be his wish to plead [not] guilty because of insanity because he does not believe he is insane, which, in itself, is a symptom of his illness."

These conclusions are abundantly supported by the facts recited in the reports themselves, which detail not only the defendant's life almost from birth, but also the abnormalities which he has exhibited for years. These facts are much too minute and voluminous for even a summary here. Suffice it that

they show Kitchens for many years has not been a normal human being.

Further and also from the record we gather that on November 6, 1950, Kitchens was adjudged to be dangerously mentally ill and an insane person by the Superior Court of the State of California for the City and County of San Francisco, and thereupon committed to the State Hospital at Stockton, California. No discharge from this commitment or judgment of restoration to capacity subsequent to this finding appears or is anywhere suggested. Indeed, the only reasonable inference to be drawn from this record is that at the time of Kitchen's trial below he was an escapee from this institution to which he had been returned sometime after the hearing before Judge Ridge which we have mentioned.

Opposed to this evidence, which points directly to the conclusion that Kitchens was insane when he was tried under the information here, are two bits of evidence to the contrary. A psychiatrist at the Veterans' Hospital at Sheridan, Wyoming, where Kitchens had been confined pursuant to his commitment by the Montana court, and which he left on June 17 or 18, 1954, testified for the state in rebuttal that it was his opinion Kitchens at that time was "sane and competent". The value and weight of this observation was, however, seriously impaired (1) by the admission of the witness himself on cross examination that "sometimes" the patients are discharged when they are "still psychotic and mentally ill"; and (2) by the testimony of the witness Brower for the state, who was a psychiatric social worker at this hospital, that "there are patients who are discharged who may not have completely overcome their psychotic state".

Also in rebuttal the state offered the testimony of two lay witnesses of doubtful competency, who as jurors in the course of a trial of the defendant Kitchens in justice court on July 29, 1954, had observed him there. Without objection these witnesses gave their opinions, the one, that Kitchens "appeared to be perfectly sane", the other, that he was "sane at that time."

Of other evidence to controvert the case made by the defense, which tended to show that Kitchens was permanently insane, there was none. Nor were there other facts and circumstances so far as this record discloses coming to the attention of the judge below outside of the technical record made at the trial which indicated that Kitchens was not then insane as theretofore Judge Holt, Judge Murray, Judge Ridge and the California court as well had found him.

By way of preliminary to our discussion of the controlling question of law on this appeal we note that the test of Kitchens' mental capacity with which we are presently concerned is not the test applicable to determine his guilt or innocence of the crime charged in the information under which he was tried. It is the law of Montana that upon the merits of that charge the defendant Kitchens is guilty of forgery, if his mental stature at the time it is alleged the crime was committed was sufficient to meet the so-called right-wrong test, which although repudiated in some jurisdictions, Durham v. United States, D. C. Cir., 214 F. (2d) 862, 869, 876, is yet the law of Montana, State v. Simpson, 109 Mont. 198, 211, 95 Pac. (2d) 761; State v. Narich, 92 Mont. 17, 23-24, 9 Pac. (2d) 477; State v. Leakey, 44 Mont. 354, 370, 120 Pac. 234.

Here, however, the question which answered determines the right of the state to try this defendant for this forgery is exactly the question which confronted Judge Murray on December 2, 1952, in the federal court at Butte, where he found Kitchens then so mentally incompetent as to be unable to understand the proceedings taken against him there, or properly to assist in his own defense.

That is, if during the trial below there was raised a doubt of Kitchens' mental grasp in this particular, section 94-9302 of our Codes was brought into play in the case. His sanity then should have been submitted to a jury empaneled specifically to determine for the purposes of this prosecution whether Kitchens at that time could comprehend the nature of the proceedings against him under this information and whether he

was mentally able to advise with, and assist his counsel in his defense against this charge. People v. Aparicio, 38 Cal. (2d) 565, 567, 241 Pac. (2d) 221, decided under California Penal Code, section 1368; People v. Perry, 14 Cal. (2d) 387, 399, 94 Pac. (2d) 559, 124 A. L. R. 1123 (semble); State ex rel. Townsend v. Bushong, 146 Ohio St. 271, 273, 65 N. E. (2d) 407; Murphy v. State, 72 Okl. Cr. 1, 25, 112 Pac. (2d) 438; Carter v. State, 199 Miss. 871, 25 So. (2d) 470; Commonwealth v. Ragone, 317 Pa. 113, 125, 126, 176 A. 454; 23 C. J. S., Criminal Law, section 940, page 240; 16 C. J., Criminal Law, section 2017, page 791; 14 Am. Jur., Criminal Law, section 45, pages 802, 803; 8 Cal. Jur., Criminal Law, section 271, pages 197, 198; Weihofen, Mental Disorder as a Criminal Defense (1954), Ch. IX, section 1, pages 430, 431.

Also by way of further preliminary we note that there is nothing novel or ambiguous about section 94-9301 of the Montana Penal Code, which stipulates that a "person cannot be tried, adjudged to punishment, or punished for a public offense while he is insane." This statute is declaratory of the common law as it has existed at least since Blackstone's day. Freeman v. People, 4 Denio, N. Y. 2, 19, 20; Weihofen, Mental Disorder as a Criminal Defense, Ch. IX, section 1, pages 428-430. Comparable or similar statutes have been enacted in all but four states of the Union. In these four, it seems, the common law without the aid of statute remains in force. Weihofen, Mental Disorder as Criminal Defense, supra, page 439. In any event our statute means today precisely what has been the common law of both England and the United States for more than a century and a half.

In short, the universal rule, which is not peculiar to the Codes of Montana, is that if at the time of his trial below Kitchens was insane, he could not be tried as he was for the forgery with which he is charged. And, if a doubt of his sanity arose at that trial as are the provisions of section 94-9302, the issue of his sanity *vel non*, which that doubt suggested, was to

be met and answered before another forward step was taken in the prosecution.

It is not of importance in the case before us that some of the facts bearing upon Kitchens' sanity, which came to the attention of the judge below, were rooted in evidence excluded upon the trial of the issue of Kitchens' guilt or innocence. The facts and circumstances which raise the statutory doubt need not be technically admissible as evidence at the trial had.

A doubt within the meaning of section 94-9302 may come from matters which are brought to the attention of the trial judge wholly beyond the common law record, or which although occurring at the trial do not appear in the record, or which although shown in the record are not admissible as evidence bearing upon any issue before the trial court on the merits. The sources of that doubt need not be sanctioned by any rule of evidence; they need not be evidence. It is enough that the doubt comprehended by the statute arises from credible and trustworthy information brought to the attention of the trial court from any source at all. People v. Vester, 135 Cal. App. 223, 228, 26 Pac. (2d) 685; Fralick v. State, 25 Ariz. 4, 8, 212 Pac. 377; State v. Detar, 125 Kan. 218, 221, 263 Pac. 1071; State v. Gunter, 208 La. 694, 706, 707, 23 So. (2d) 305; Berwick v. State, 94 Okl. Cr. 5, 9, 229 Pac. (2d) 604; Johnson v. State, 73 Okl. Cr. 370, 380, 381, 121 Pac. (2d) 625; State v. Folk, 56 N. M. 583, 591, 247 Pac. (2d) 165; 23 C. J. S., Criminal, Law, section 940 (2), pages 236, 237; 16 C. J., Criminal Law, section 2016, page 791; 14 Am. Jur., Criminal Law, section 44, page 801; Weihofen, Mental Disorder as a Criminal Defense (1954), Ch. IX, section 3, pages 440, 441.

This doubt must of course arise in the mind of the judge presiding at the trial before an independent inquiry into the question of the defendant's sanity becomes mandatory under the statute. State v. Peterson, 24 Mont. 81, 86, 60 Pac. 809; State v. Howard, 30 Mont. 518, 529, 77 Pac. 50; State v. Schlaps, 78 Mont. 560, 575, 576, 254 Pac. 858. Compare State v. Vettere, 77 Mont. 66, 72, 73, 249 Pac. 666. The question whether

such a doubt is raised in any given case addresses itself directly to the sound judicial discretion of the trial court. State v. Peterson, supra; State v. Schlaps, supra; State v. Vettere, supra. But like any other matter thus committed to the discretion of a court or its judge this discretion may not be exercised arbitrarily. Its abuse will be reviewed on appeal; and where an abuse does appear the reviewing court will say as a matter of law a doubt did arise which commanded action, and which therefore works a reversal for the error of the judge below in failing to heed its command. Fralick v. State, supra; Wilhite v. State, 158 Ark. 290, 294, 250 S. W. 31; People v. Barnett, 27 Cal. (2d) 649, 657, 166 Pac. (2d) 4; People v. Vester, supra; People v. Maynard, 347 Ill. 422, 179 N. E. 833; People v. West, 25 Cal. App. 369, 372, 143 Pac. 793; People v. Jackson, 105 Cal. App. (2d) 811, 815, 234 Pac. (2d) 261; People v. Perry, 14 Cal. (2d) 387, 399, 94 Pac. (2d) 559, 124 A. L. R. 1123; Deeb v. State, 118 Fla. 88, 158 So. 880; State v. Detar, supra; State v. Gunter, supra, 208 La. at page 710, 23 So. (2d) at pages 309, 310; Shipp v. State, 215 Miss. 541, 61 So. (2d) 329; Evans v. State, 123 Ohio St. 132, 174 N. E. 348; Johnson v. State, supra; Berwick v. State, supra; Commonwealth v. Ragone, supra; State v. Folk, supra; State v. Harrison, 36 W. Va., 729, 739, 740, 15 S. E. 982, 18 L. R. A. 224; Weihofen, Mental Disorder as a Criminal Defense (1954), Ch. IX, section 3, page 447.

Turning now to the case in hand, with the rule and the reason of these authorities in mind, we see no escape from the conclusion that a doubt did arise as a matter of law under our statute in the course of this trial. The district court and its judge then had no alternative other than to submit the question of Kitchens' sanity at the time to a jury empaneled under section 94-9302, before sending the other question of his guilt or innocence on the merits to the jury sitting to try that issue. For that conclusion we find in the record two substantial and sufficient reasons.

First, the adjudication on April 21, 1954, by the district court for Cascade County that Kitchens was insane gave

rise under section 64-112 to the presumption that he was still insane on November 29, 1954, when he was brought to trial on this charge. State v. Bucy, 104 Mont. 416, 419, 66 Pac. (2d) 1049; People v. Field, 108 Cal. App. (2d) 496, 500, 501, 238 Pac. (2d) 1052. Moreover, where the adjudication is that Kitchens is permanently insane as was the finding of Judge Ridge on May 12, 1953, the presumption of continuing insanity is universally recognized consistent with the principles of the common law and independent of any particular statute. People v. Maynard, supra; People v. Baker, 42 Cal. (2d) 550, 564, 268 Pac. (2d) 705. This presumption is not conclusive. It may, of course, be rebutted. State v. Bucy, supra; People v. Field, supra.

It might have been overcome here by showing a restoration to capacity under section 91-4704. But no such showing was made or attempted. This presumption might also have been rebutted by evidence that the certificate mentioned in section 64-112 had been made by the officer of the Veterans' Hospital at Sheridan, Wyoming, who is authorized by section 91-4818 to do so. State v. Bucy, supra. But at the trial no such certificate was produced or mentioned. In this connection it is significant that the witness Eagleton, a psychiatrist at that hospital while Kitchens was there, testified only that the defendant was discharged from that institution. He does not say that as the statute requires Kitchens was discharged "cured and restored to reason," or discharged "in an improved condition".

Clearly what is enough to raise a doubt of Kitchens' sanity may well be something less and different than the evidence necessary to carry the issue that he is insane. Compare People v. Vester, supra, 135 Cal. App. at page 227, 26 Pac. (2d) at page 687; Fralick v. State, supra, 25 Ariz. at pages 15, 16, 212 Pac. at page 380. Here we think the presumption of insanity which follows upon Judge Holt's finding and commitment, upon Judge Murray's finding and commitment, and as well upon the commitment and finding made by Judge Ridge was enough as a matter of law and without resort to other facts appearing in this record to raise the doubt in the mind of the

342

trial court, which section 94-9302 contemplates. State v. Folk, supra, 56 N. M. at page 593, 247 Pac. (2d) at pages 171, 172, and cases there cited; People v. Maynard, supra.

Secondly, we think the overwhelming weight as facts before the trial judge of the successive adjudications by four different courts and judges, which this record discloses, i. e., that the defendant Kitchens was insane, could not as a matter of law be ignored. Again we mention the conclusion reached by Judge Ridge as recently as May 12, 1953, that Kitchens was "concededly permanently insane", which standing alone as the considered judgment of a court of at least coordinate jurisdiction was sufficient in itself, we think, to raise a doubt of Kitchens' sanity in the mind of the district court here. Reinforced as that finding was by the separate and successive findings of insanity by the Superior Court at San Francisco, California, by the United States District Court at Butte, and by Judge Holt in Cascade County, we can think of no stronger showing which might be made for any defendant in any case to set in motion the proceedings designed by sections 94-9302 to 94-9307 of our Codes.

We conclude that the weight of these findings, when brought to the attention of the trial court, raised the statutory doubt and moved the discretion vested in that court under the statute. The testimony of the witness Eagleton does not alter the case; for it is to be recalled here that at this stage of the inquiry we are concerned only with the preliminary question whether there is reason to doubt Kitchens' sanity. We are not concerned now with the ultimate inquiry whether the evidence sustains a verdict that he is sane.

Of course these earlier adjudications that Kitchens was insane are not a conclusive answer to the question whether he is competent now to be tried under this information in the court below. Thereby that court is not bound to find Kitchens insane; nor thereby is it ousted of jurisdiction to determine this issue for itself. People v. Willard, 150 Cal. 543, 89 Pac. 124; People v. Braswell, 103 Cal. App. 399, 404, 405, 284 Pac. 709; People v. Field, 108 Cal. App. (2d) 496, 500, 501, 238

Pac. (2d) 1052; People v. Jackson, supra, 105 Cal. App. (2d) at page 814, 234 Pac. (2d) at page 263; State v. Folk, supra; Southers v. Commonwealth, 209 Ky. 70, 73, 272 S. W. 26; Weihofen, Mental Disorder as a Criminal Defense (1954), Ch. VI, section 3, pages 324, 325.

But where as here four courts in the space of approximately four years before this trial began have found Kitchens insane, including at least one specific finding that the insanity with which he is afflicted is permanent, where the record shows no restoration to capacity either by judicial determination or administrative action, where from that record the inference is irresistible that Kitchens is now a fugitive from the California State Hospital for the insane at Stockton, California, and where it fairly appears also from the record that the federal district court sitting at Butte presently regards Kitchens as a mental incompetent, whom it may not bring to trial upon the indictment there pending against him, we must conclude that a doubt within the meaning of section 94-9302 of the Penal Code arose as a matter of law from the facts before the trial court, and that it was accordingly a manifest abuse of discretion for that court to proceed on the merits to verdict and judgment without first inquiring into Kitchens' sanity as section 94-9302 requires. People v. West, supra; Johnson v. State, supra; Berwick v. State, supra; People v. Vester, supra; State v. Detar, supra; People v. Aparicio, supra; People v. Barnett, supra.

For this error the judgment of conviction is reversed and the cause is remanded. If a new trial is to be had under this information, the district court will first make prompt inquiry into Kitchens' sanity consistent with this opinion and as R. C. M. 1947, sections 94-9302 to 94-9307, require. If this prosecution is dismissed, the defendant will be delivered to the custody of the district court for Cascade County, which under its commitment of April 21, 1954, and R. C. M. 1947, section 91-4818, has continuing jurisdiction to inquire into his mental condition and to make such disposition of him as may be required by law.

344

MR. JUSTICE ANGSTMAN and ANDERSON, concur.

MR. CHIEF JUSTICE ADAIR: (specially concurring).

"A person cannot be tried, adjudged to punishment, or punished for a public offense while he is insane." R. C. M. 1947, section 94-9301. So says the law.

Mack Kitchens is an insane person.

On November 6, 1950, the Superior Court in and for the County and City of San Francisco in the State of California, found and adjudged that Kitchens "is dangerously mentally ill," and "is an insane person" and ordered that he be committed to the State Hospital at Stockton, California.

On December 2, 1952, by judgment that day made, filed and entered in the United States District Court for the District of Montana, Butte Division, United States District Judge W. D. Murray presiding, found that Mack Kitchens "is presently insane" and that he "is so mentally incompetent as to be unable to understand the proceedings against him or to properly assist in his own defense" whereupon it adjudged that Kitchens "is mentally incompetent," and it ordered his commitment to the Medical Center for Federal Prisoners, located at Springfield, Missouri.

On May 12, 1953, by order and judgment that day made, filed and entered in the district court of the United States for the Western District of Missouri, Western Division, United States District Judge Albert A. Ridge presiding, in denying Kitchens' petition for a writ of habeas corpus said:

"Petitioner, concededly permanently insane, is confined in the United States Medical Center for Federal Prisoners at Springfield, Missouri * * *.

"Petitioner has been in the custody of respondent [Dr. Ivan W. Steele, Warden, United States Medical Center, Springfield, Missouri] for a period of six months. It now appears that he probably never will be mentally capable of standing trial on the charges made against him. The Warden of the Medical Center is endeavoring to have the State of California take jur-

isdiction over petitioner. To date, the Warden's efforts in that behalf have been in vain. Unless petitioner alleges and establishes by competent evidence before this Court that the state of his domicile, California or Montana, will assume custody of him he is not entitled to presently be released from the Medical Center, so long as the charges made against him are not disposed of according to law, i. e. by a trial on the merits thereof or by way of dismissal as he concededly is insane." See Kitchens v. Steele, D. C., 112 F. Supp. 383, 384.

On April 21, 1954, by order and judgment that day made, filed and entered in the District Court of the Eighth Judicial District of the State of Montana, in and for the County of Cascade, District Judge C. F. Holt presiding, found, ordered and adjudged:

"That the said Mack Kitchens is insane and is so far disordered in his mind as to endanger his health, person and property and the personal safety of citizens and residents of the county and it appearing that commitment to a hospital for mental disease is necessary for safekeeping and treatment, and it appearing that such person is eligible for care or treatment by Veterans' Administration of the United States Government;

"Now, Therefore, It Is Hereby Ordered that the said Mack Kitchens, an insane person, be committed to and confined to the Veterans' Hospital at Sheridan, Wyoming, pursuant to the provision of Section 91-4818, Revised Codes of the State of Montana, 1947, and that any transportation costs incurred in connection with such commitment be paid by the Veterans' Administration."

Although four separate courts have found and adjudged Kitchens insane and have in each case ordered him committed to a hospital or medical center there to receive medical care and treatment for his illness and mental disorder, which is of a paranoid type, it being apparent that he has long suffered from schizophrenic reaction, yet at no time has any of said committing courts made any order or adjudication that Kitchens has been restored to sanity.

While the law plainly says that a person so afflicted *"cannot be tried* \* \* \* for [an] \* \* \* offense"*, section 94-9301, yet Kitchens was tried in the district court of Yellowstone County.

Although the law says that a person so afflicted *"cannot be* \* \* \* adjudged to punishment"*, section 94-9301, still Kitchens was so adjudged in the district court of Yellowstone County.

Finally the law says that a person so afflicted *"cannot be* \* \* \* *punished* for a public offense"*, section 94-9301, yet Kitchens was punished and he continues to be punished for an "offense while he is insane." section 94-9301.

Kitchens was born in the year 1927.

While serving as an enlisted man in the United States Navy he met with an accident wherein he suffered painful injuries including serious injuries to his head which left him mentally upset and disorganized to such an extent that after examination before a twelve-man board he was ordered discharged from the Navy as being unsuitable and unfit for further duty.

Next Kitchens voluntarily enlisted in the United States Air Force but again he was discharged from that branch of the armed forces as being unfit for further military service.

As a person who is eligible for care and treatment by the Veterans' Administration or other agency of the United States Government, Kitchens should be released from the state prison to which he was illegally committed and delivered into the custody of the sheriff of Cascade County, Montana, to the end that the district court of Cascade County may forthwith inquire into the mental condition of Kitchens, said court having continuing jurisdiction in his case under the express provisions of R. C. M. 1947, section 91-4818.

Kitchens should not longer be incarcerated in the state prison nor should he be confined in the Yellowstone County jail at Billings for months awaiting a second trial on a charge of having committed a public offense while insane for which he cannot lawfully "be tried, adjudged to punishment, or punished". Section 94-9301.

He is a sick man. He needs medical treatment in a hospital, —not punishment in a penal institution.

MR. JUSTICE BOTTOMLY:

I concur in the foregoing specially concurring opinion of Mr. Chief Justice Adair.