STATE OF MONTANA ex rel. MACK KITCHENS, Relator, v. DISTRICT COURT of the Thirteenth Judicial District in and for the County of Yellowstone, et al., Respondents.

No. 9649.
Submitted January 20, 1956. Decided March 16, 1956.
294 Pac. (2d) 907.

58

Mr. Michael J. Whalen, Billings, for relator.

Mr. Arnold H. Olsen, Atty. Gen., Mr. Emmet T. Walsh, Asst. Atty. Gen., Mr. John J. Cavan, Jr., Co. Atty., Billings for respondent.

Mr. Whalen and Mr. Cavan argued orally.

MR. JUSTICE DAVIS:

Mandamus on the relation of Mack Kitchens to the district court for Yellowstone County and to the Honorable E. E. Fenton, a judge thereof.

On December 3, 1954, the district court for Yellowstone County convicted Kitchens of forgery and sentenced him to a term in the state prison. On his appeal and on August 5, 1955, this court reversed and remanded with directions. See State v. Kitchens, 129 Mont. 331, 286 Pac. (2d) 1079, 1085. No petition for rehearing or other application that our opinion or mandate there to the district court be modified was presented. Accordingly our remittitur went down in course and was filed with the lower court on August 19, 1955.

At that time we lost jurisdiction in the case. R.C.M. 1947, ▮ section 94-8215. Specifically then we lost any jurisdiction we may have had theretofore to alter in any particular either our opinion in State v. Kitchens, supra, or the mandate of this court which followed upon that opinion, certainly, unless our remittitur were first recalled.

At bar, however, it does not appear that there are any grounds upon which this remittitur should be recalled; and on the oral argument counsel for the respondent court and judge expressly disclaimed any contention that there is error in the remittitur

as it went down which calls for correction. They insist only that as written it be construed and applied by us here as the respondents have already construed and applied it below.

It is pertinent then to note that this remittitur, which reached the district court on August 19, 1955, contained a copy of our opinion in State v. Kitchens, and there set out this mandate to that court, viz., "If a new trial is to be had under this information, the district court will first make prompt inquiry into Kitchens' sanity consistent with this opinion and as R.C.M. 1947, sections 94-9302 to 94-9307, require. If this prosecution is dismissed, the defendant will be delivered to the custody of the district court for Cascade County, which under its commitment of April 21, 1954, and R.C.M. 1947, section 91-4818, has continuing jurisdiction to inquire into his mental condition and to make such disposition of him as may be required by law."

No new trial was ever had under the information to which this mandate refers. To the contrary on November 30, 1955, the prosecution mentioned there was dismissed upon motion of the county attorney, who immediately moved for leave to file a new information against Kitchens charging a different offense and initiating thereby a new prosecution. Counsel for Kitchens countered with a motion bottomed upon the mandate which we have quoted above that Kitchens be delivered to the custody of the district court for Cascade County.

On December 3, 1955, the district court for Yellowstone County denied this motion by Kitchens and granted the county attorney's motion for leave to file the new information. After demurrer overruled Kitchens pleaded not guilty to the new charge. His trial was then set for January 9, 1956.

Thereafter on January 4, 1956, counsel for Kitchens applied to this court for an appropriate writ to compel the respondents to remand him to Cascade County consistent with his motion to that end made and denied below, and with our mandate as he interpreted it. Upon that application an alternative writ of mandate issued.

By the return made thereto and now before us it is admit-

ted that Kitchens has not been turned over to Cascade County. To the contrary the respondent court and judge have shown cause that he is presently held in Yellowstone County for prosecution on the charge now presented against him there by the information filed pursuant to the leave granted thereunto on December 3, 1955. Argument has been had here on that return; briefs have been filed. Final submission of the matter has now been made for our judgment.

That judgment is that a peremptory writ of mandate issue forthwith out of this court as prayed.

We agree with the relator's counsel that the mandate in State v. Kitchens as it went to the district court is clear, its meaning plain. We agree that the language of that mandate leaves no room for construction, that neither the district court for Yellowstone County nor this court is vested at this late date with any discretion to do other than carry out that mandate as written. Whether it and the opinion of this court which preceded it are right or wrong is not now important or controlling.

For it is now the duty of the respondents, consequent upon the dismissal on November 30, 1955, of the only information to which our opinion in State v. Kitchens referred, to turn Kitchens over to the district court for Cascade County as the remittitur of this court then on file in that prosecution directed in the particular event of that dismissal.

Consequently many matters touched upon in the respondents' return here are in no wise material to the proceeding now before us. Specifically it is not now material what inquiry the respondents made *ex parte* into Kitchens' sanity after the remittitur was received on August 19, 1955. Nor is it material why the district court delayed the inquiry directed into Kitchens' sanity under R.C.M. 1947, section 94-9302, although the case against him which we reviewed in State v. Kitchens was pending in that court until November 30, 1955. For present purposes we note only that the prosecution against Kitchens which we reversed, and which was dismissed on November 30,

1955, could have been called for a new trial under the information pending there and within the meaning of section 94-9302 at any time after August 19, 1955, and before dismissal. An inquiry then into Kitchens' sanity consistent with our mandate and with the statute could have been made as promptly, it seems, as the investigation which according to the respondents' return was actually undertaken upon the initiative of the respondent judge, i. e., if the district court and the judge sitting in the case had been so minded.

These matters, however, and as well all else done or omitted in the court below between August 19, 1955, and November 30, 1955, are collateral to the controlling inquiry, which is presented now, viz., whether we should ourselves obey our own judgment and recognize our own mandate, both of which in the circumstances now obtaining we are powerless to modify or revise. And of course, because we are persuaded we must ourselves obey that mandate, which became binding on us as well as the respondents when State v. Kitchens was remanded by us to the lower court, we are of the opinion also that the district court for Yellowstone County and its judge there sitting in Kitchens' case should do likewise. See State ex rel. Edwards v. District Court, 41 Mont. 369, 375, 376, 109 Pac. 434; Utah Copper Co. v. District Court, 91 Utah 377, 397, 399, 400, 64 Pac. (2d) 241. This short answer in truth disposes in its entirety of the controversy before us.

Moreover, this disposition of the case makes it unnecessary for us to rule upon the relator's motion made in this court to strike out from the respondents' return. That motion has merit, but whether it be sustained or denied the result here must be the same. In either event a peremptory writ will issue. Accordingly we pass this motion without further comment.

There remain, however, for answer two subordinate points argued or suggested by the respondents' counsel in denial of the conclusion which we have reached. First, it is said that neither our opinion nor our mandate in State v. Kitchens, properly construed, deprives Yellowstone County of jurisdiction

to hold Kitchens for trial upon any criminal charge which may be brought against him in that county, and even though the prosecution which we reviewed in State v. Kitchens be dismissed. We do not agree. Obviously what we actually said there was that the earlier adjudications by other courts finding Kitchens insane were not a "conclusive answer to the question whether he is competent now to be tried under this information" in the district court for Yellowstone County. Obviously also we added in this same connection only that the Yellowstone County court was not "ousted of jurisdiction to determine this issue for itself"; i. e., whether Kitchens was competent to be tried under "this information" then pending in Yellowstone County, which was the only information and the only prosecution mentioned, discussed, or contemplated at the time by court or counsel. We shall not obscure the certain meaning of our opinion by further discussion or analysis here.

The fact is that Yellowstone County has not chosen to inquire whether Kitchens was competent to stand trial under the information to which our opinion refers, but to the contrary has dismissed that prosecution. At this point our mandate in plain language indicated where the jurisdiction of Yellowstone County ended and that of Cascade County attached, i. e., then Kitchens was to "be delivered to the custody of the district court for Cascade County". Because this has not been done, the mandate sent the district court in State v. Kitchens has not been executed. Again we say that it is not at all material now whether that mandate is right or wrong, or whether upon a timely application to this court it would have been remolded to fit the case in hand as the respondents argue it should be.

Here it is proper to emphasize that the opinion in State v. Kitchens and the mandate to the district court found in that opinion were not criticized at all until long after both became final. Section 94-8215, supra. No one suggested while the case was open for rehearing that either the opinion or the remittitur to issue thereon too narrowly defined the jurisdiction of the Yellowstone County court, or that if the only prosecution then

pending against Kitchens were dismissed, the district court for Cascade County was not the appropriate Montana court to take over at that point, because Yellowstone County contemplated another prosecution not yet brought.

If the contention now pressed upon us, viz., that the right of Yellowstone County to determine for itself the issue of Kitchens' sanity should not be limited to the single prosecution pending prior to November 30, 1955, had been timely presented while we yet had jurisdiction, the case made for our consideration would have been entirely different from that now before us. For the return made in this proceeding, which for the first time raises the point, is undeniably too late to justify a revision of anything written in State v. Ktichens. The mandate and the opinion of this court in that case which are here challenged are, moreover, too plain to justify construction. We may not permissibly accomplish indirectly by construction what we are forbidden to do directly by revision. The argument that we may in this proceeding construe our mandate in State v. Kitchens as the respondents contend has no merit.

Second. Any contention that a writ of mandate out of this █ court in these proceedings is not the proper remedy to secure compliance with the mandate of this court in State v. Kitchens is likewise without merit. The settled law of Montana is otherwise. Mandamus or the writ of mandate as it is known under our Codes, R.C.M. 1947, chapters 93-9101 to 93-9114, both inclusive, is properly issued to carry into effect the judgment of this court where the district court fails for any reason to execute its mandate. State ex rel. United States Fidelity & Guaranty Co. v. District Court, 77 Mont. 594, 251 Pac. 1061; State ex rel. Simon v. District Court, 128 Mont. 454, 277 Pac. (2d) 534.

A peremptory writ of mandate will therefore issue forthwith █ out of this court commanding the respondent district court and judge to deliver Kitchens to the custody of the district court for Cascade County, which under its commitment of April 21, 1954, and R.C.M. 1947, chapter 91-4818, has con-

tinuing jurisdiction to inquire into his mental condition and to make such disposition of him as may be required by law. If and when that jurisdiction is exhausted, Yellowstone County may then be heard to assert any claim it may have to hold or try Kitchens there.

MR. CHIEF JUSTICE ADAIR and MR. JUSTICE ANDERSON AND BOTTOMLY, concur.

MR. JUSTICE ANGSTMAN:

I think the foregoing opinion places too strict a construction upon the mandate issued by this court in State v. Kitchens, 129 Mont. 331, 286 Pac. (2d) 1079.

The particular language counted on by petitioner is this: ''If this prosecution is dismissed, the defendant will be delivered to the custody of the district court for Cascade County, which under its commitment of April 12, 1954, and R.C.M. 1947, chapter 91-4818, has continuing jurisdiction to inquire into his mental condition and to make such disposition of him as may be required by law.''

There was no peculiarity about that particular prosecution that distinguished it from any other so far as the issue of sanity is concerned. The purpose of this court was to make disposition of the defendant in the event there was no criminal prosecution pending against him.

In my opinion it was not the purpose of this court to require defendant to be surrendered to the district court of Cascade County if the pending prosecution were dismissed and another information was filed simultaneously charging another crime. But if the mandate be ambiguous then I think we should recall it for the purpose of making clear its meaning. 24 C.J.S., Criminal Law, chapter 1953, page 1140.