THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* JUAN CRUZ ROMÁN, Defendant and Appellant.

No. 17001. Decided January 31, 1962.

*Juan Cruz Román,* per se, and *Francisco García Quiñones* for appellant. *Arturo Estrella, Acting Solicitor General,* and *Jorge Segarra Olivero, Assistant Solicitor General,* for The People.

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Santana Becerra and Mr. Justice Rigau.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

The appellant was charged before the Superior Court San Juan Part, with the crime of murder in the first degree, consisting in that on April 3, 1958, and in Carolina, Puerto Rico, he "unlawfully, wilfully, with criminal intent, malice aforethought, deliberately, and with the resolute and deliberate intent of unlawful killing, thereby showing that he had a perverse and malignant heart, attacked and injured Lydia María Cruz Fernández, a human being, with a knife, inflicting her with various wounds of a serious nature which caused her death."

On arraignment, the defendant pleaded not guilty and requested trial by jury. The trial was held on August 11, 12 and 13, 1958, with Francisco García Quiñones, as counsel for the defendant.

During the trial and while an incident was being discussed on the voluntariness of a sworn statement given by the defendant before the district attorney, a substantial doubt arose as to the sanity of the prisoner, and the court ordered that

the question be submitted to the decision of three medical experts, whom it designated. The Board of Psychiatric Experts thus named, after having examined the defendant, filed its report, stating therein that said defendant was not mentally fit to go to trial and answer for the crime charged against him.[1] In view of this report, which was accepted by the district attorney and the defense, the court issued an order declaring the trial null and void, ordered that the defendant be transferred to the Psychiatric Hospital and postponed all the proceedings until the defendant had full capacity to face the charge.[2]

That part of the order which provided for the admission of the defendant in the Psychiatric Hospital was never observed. On December 8, 1959, doctors Massanet and Señeriz examined the defendant again, by order of the judge

---

[1] The report, submitted by doctors Carlos L. Massanet and Ramón H. Señeriz, states essentially the following:

"We certify that after having examined the defendant Juan Cruz Román, we arrived at the conclusion that on this afternoon he is mentally incompetent, in the light of the law, to face trial, and to answer for the crime charged against him. We recommend confinement in the Insular Psychiatric Hospital in order that he may undergo the laboratory examinations, psychological tests, and other examinations which the Faculty of said institution deem necessary in his case."

[2] The order of the court, in its dispositive part, reads thus:

"First: That the proceedings in this case are null and void in relation to the defendant, who could not, in the light of the medical examination, mentally answer for the charge made at the trial and was in no condition to advice his lawyer nor to cooperate with him in the defense of his rights; second: that defendant be transferred immediately from the place where he is now confined to the Psychiatric Hospital of the Commonwealth of Puerto Rico, so that he be received in said institution and the recommendations of the psychiatric experts be followed; third: that a copy of the report rendered by the psychiatric experts be attached to this order, so that the detailed and specific recommendations of the Hospital's experts be known.

"The proceedings of this case are stayed until a final report is rendered by the medical authorities in charge of the examination and treatment of defendant or until the latter resumes the mental qualifications to face a trial of this nature and is in full capacity to answer for the crime charged against him."

and on this occasion they submitted a report in which they stated that the defendant was mentally fit to face trial and answer for the crime charged against him.[3]

In view of said report the case was once more set for trial, and it was held on January 13, 14, and 15, 1960, with Mr. García Quiñones as attorney of record for the defendant. The jury sitting at the trial found the defendant guilty of murder in the second degree and the court sentenced him to serve a term of 15 to 30 years' imprisonment in the penitentiary.

In support of this appeal the defendant-appellant has filed a brief on his own right, and another one by his lawyer. In the brief subscribed by the defendant, three errors are assigned, namely: (1) a sentence of second-degree murder does not lie since the malice aforethought, the deliberation and intent to cause the death of the victim were not established; (2) the rights of the defendant to a speedy and public trial were violated, and (3) the previous conduct of the defendant does not justify a sentence of 15 to 30 years' imprisonment in the penitentiary.

■ The first error assigned was not committed. The evidence of the prosecution, the only one before the jury, fully justifies the verdict rendered declaring the defendant guilty of murder in the second degree. The aforesaid evidence showed that the deceased Lydia María Cruz Fernández was the daughter of the defendant and his wife Felícita Fernández and that she lived with them. Towards the end of

---

[3] Said report reads:

"We, physicians-surgeons, specialists in Psychiatry, and duly authorized by the Board of Medical Examiners of Puerto Rico to practice the profession of physician-surgeon in this Island and now practicing in the metropolitan area, named as Board of Psychiatric Experts by order of Mr. Joaquín Correa Suárez, Judge of this court, hereby certify that after having examined the defendant Juan Cruz Román, we arrive at the conclusion that on this morning he is mentally competent in the light of the law to face trial and to answer for the crime charged against him."

March 1958, Lydia María went to live conjugally with a man named Emiliano Ramírez Fernández. In the afternoon of April 3 of the same year the defendant met a friend to whom he complained of his daughter's action, and he grieved and cried. Shortly thereafter, Lydia María, accompanied by Catalina Ramírez passes by defendant. The latter asks her why she had not requested his blessing. She did so and he gave her his blessing. Then defendant told his daughter to go and get the clothes she had left at defendant's house. Hours later, on that same afternoon of April 3, Lydia María together with Catalina Ramírez and José Ramón Fernández, went to her parents' home to get her clothes. Lydia María's mother put the clothes in a trunk and at the moment she was giving it to José Ramón Fernández, defendant suddenly appeared with a knife, and fell upon his daughter Lydia María, stabbing her and causing her death. Having done this, defendant went into his house, and after closing the doors, wounded himself several times.

██ Malice and premeditation are essential elements of the crime of murder in the second degree. The State is not bound to present direct and specific evidence of a mental and subjective condition such as malice aforethought, since this can be inferred from the use of a weapon. *People* v. *Blanco*, 77 P.R.R. 726; *People* v. *Torres*, 75 P.R.R. 219; *People* v. *Méndez*, 74 P.R.R. 853. The facts as narrated gave the jury grounds to infer the existence of malice aforethought since it does not appear that upon killing his daughter, defendant was moved by the heat of passion or on a sudden impulse. Neither was there any provocation on the part of the victim nor are there any circumstances which mitigate, excuse, justify or lessen the fact of the death. The established facts indicate that defendant had a perverse and malignant heart.

██ The second error is frivolous. It is predicated on the fact that the imprisonment of defendant while awaiting trial exceeded six months. Although incarceration for more

than six months is in itself illegal, it does not imply that the prosecution cannot be carried through after said period expires or that defendant is exonerated from the crime. *People v. Ortiz,* 76 P.R.R. 231. See also, *Sánchez v. Warden,* 78 P.R.R. 808.

■ The third assignment is equally frivolous. The sentence imposed on the appellant conforms to law. The law authorizes the trial judge to impose a minimum greater than the one fixed in the penal statute and a maximum not greater than the statutory one. Act No. 295 of 1946 as amended by Act No. 176 of 1949; *Vázquez v. Rivera,* 70 P.R.R. 203; *People v. Superior Court,* 78 P.R.R. 135.

The appellant through his counsel assigns the following errors:

"First: The court erred fundamentally in failing to follow the recommendations of the psychiatrists, in the first trial.

"Second: The court erred in failing to postpone the second trial in order to follow the recommendations of the psychiatrists.

"Third: The court erred in trying the defendant and submitting him to trial in open violation of the due process of law which his case required."

He discusses these three errors jointly. His theory is to the effect that defendant could not be brought to trial until he had been committed to the Psychiatric Hospital, as Judge Correa Suárez had ordered, that for these reasons the trial should have been postponed and in refusing to do so, the court violated defendant's right to the due process of law.

■ He is wrong. Our Code of Criminal Procedure contains provisions which prohibit a person from being tried, adjudged to punishment, or punished for a public offense while he is insane, §§ 439 to 444 of the Code of Criminal Procedure of Puerto Rico (34 L.P.R.A. §§ 1571–1576).[4] On

---

[4] Section 439 provides: "A person can not be tried, adjudged to punishment, or punished for a public offense, while he is insane." Section 440 provides: When an action is called for trial, or at any time during the

the other hand, insanity, at the moment of the perpetration, of the crime, exempts from criminal responsibility. Section 39 of the Penal Code (33 L.P.R.A. § 85).[5] But insanity, as incapacity to be brought up for judgment and for punishment, has no legal connection whatsoever with the responsibility or irresponsibility of the defendant at the time of the perpetration of the crime. The purpose of § 439 *et seq.* of the Code of Criminal Procedure is to prevent that a defendant who is incapable of understanding the nature and purpose of the proceedings taken against him, and consequently of defending himself adequately, be brought up for trial. Persons in this situation are considered insane for the purposes of the provisions of the afore-mentioned Code of Criminal Procedure. *People* v. *Field*, 238 P.2d 1052; *People* v. *Merkouris*, 297 P.2d 999; *People* v. *Jensen*, 275 P.2d 25; *People*

---

trial, or when the defendant is brought up for judgment on conviction, if a substantial doubt arise as to the sanity of the defendant, the court must order the question as to his sanity to be submitted to three experts designated by the court, and the trial or the pronouncing of the judgment must be suspended until the question is determined by their decision, and the trial jury may be discharged or retained, according to the discretion of the court, during the pendency of the issue of insanity." Section 441 describes the procedure to be followed to decide the question of insanity. Section 442 provides: "If the experts find the defendant sane, the trial must proceed, or judgment be pronounced, as the case may be. If the experts find the defendant insane, the trial or judgment must be suspended until he becomes sane, and the court must order that he be in the meantime committed to an insane asylum, and that upon his becoming sane he be delivered to the warden of the jail." Section 443 contains provisions concerning the bail defendant might have deposited, and § 444 establishes: "If the defendant is received into the asylum, he must be detained there until he becomes sane. When he becomes sane, the superintendent must notice of that fact to the prosecuting attorney. The warden must thereupon, without delay, bring the defendant from the asylum, and place him in proper custody until he is brought to trial or judgment, as the case may be, or is legally discharged."

[5] In Puerto Rico the defendant may plead the defense of insanity upon denying the charges. If the jury renders a verdict of acquittal on the ground of insanity, the court may institute proceedings to determine whether the defendant continues to be insane for the purpose of ordering his commitment to an asylum. Section 293 of the Code of Criminal Procedure (34 L.P.R.A. § 823).

v. *Renteria*, 6 Cal. Rptr. 640; *People* v. *Dailey*, 345 P.2d 558; Werhofen, *Mental Disorder As a Criminal Defense*, at p. 430.

 Upon interpreting the afore-mentioned § 440 of the Code of Criminal Procedure, we decided in *People* v. *Báez*, 67 P.R.R. 279, that submission of issue of defendant's insanity to experts at the time of the trial is required only when substantial doubt as to such insanity arises in the mind of the trial judge; that a motion to those effects is addressed to the discretion of the trial court and only an abuse of its discretion warrants interfering with the action of the court. It has been held that the doubt referred to in the afore-mentioned § 440 must arise in the mind of the judge, and not in the mind of defendant's counsel or in that of any other person. *People* v. *Jensen*, *supra; People* v. *Gómez*, 258 P.2d 825; *People* v. *Harmon*, 243 P.2d 15; *State* v. *Kitchens*, 286 P.2d 1079; *People* v. *Dailey*, *supra*. We agree with the Solicitor General in the following reasoning set forth in his report:

"At the moment of the second trial, the presiding judge had before him a report subscribed by two psychiatrists—the same ones who examined and declared defendant mentally incompetent at the first trial—issued on December 8, 1960 and in which said psychiatrists certify that the defendant Juan Cruz Román, was mentally competent to face trial and to answer for the crime charged against him. Furthermore, defendant's counsel himself admitted that his client was no longer insane. (See Tr. Ev. second trial, at p. 88.) This being so, we see no way in which substantial doubt could arise in the mind of the judge as to defendant's sanity. It is equally unlikely that the trial judge abused his discretion in refusing to suspend the proceedings in order to follow the first advice of the psychiatrists.

"To this purpose, the fact that the court which heard the first trial against defendant-appellant, did not follow the advice of the psychiatrists is irrelevant. We are in agreement with appellant's contention that starting from that moment, the commitment of defendant in a penal institution turned out to be illegal. We do not believe, however, that this fact can lead to such consequences as sought by defendant's counsel.

"We have already seen that the purpose of the provisions of the Code of Criminal Procedure to which reference has been made, is to prevent that an accused who is incapable of understanding the nature and purpose of the proceedings taken against him, and consequently of defending himself adequately, be brought up for trial. Consequently, any order issued under the authority of the provisions referred to, ordering that defendant be committed to a Psychiatric Hospital, may only be directed at obtaining defendant's recovery, so that in time, he may be taken to court, having recovered his mental health, for the holding of the trial. If upon appearing at the second trial defendant is in his right mind, that is, he is sane, the question of whether or not he should have recovered his reason in a Psychiatric Hospital instead of in any other place, is irrelevant." (Report of the Solicitor General, at pp. 11 and 12.)

The errors assigned by the defendant-appellant, not having been committed, the judgment appealed from shall be affirmed.